547 So.2d 188 (1989)
Carol Ann MOSBARGER, Appellant,
v.
Richard Dennis MOSBARGER, Appellee.
No. 88-02296.
District Court of Appeal of Florida, Second District.
July 28, 1989.
*189 Earnest W. Dean, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Stevan T. Northcutt of Levine, Hirsch, Segall & Northcutt, P.A., Tampa, for appellee.
ALTENBERND, Judge.
Mrs. Mosbarger appeals the final judgment of dissolution concerning this couple's twenty-eight-year marriage. We reverse the final judgment because it excessively penalized Mrs. Mosbarger for criminal conduct which did not significantly deplete the marital assets and which conduct had already resulted in a criminal sanction by this state. In light of the standard of living established during the marriage, the duration of the marriage, the wife's emotional condition, and the financial resources of the parties, the trial court's overall distribution scheme clearly shortchanged the wife.
The parties were married in Spokane, Washington, in 1959. At that time, Mr. Mosbarger was in the air force. Mrs. Mosbarger dropped out of high school to marry her husband. During the next fourteen years, the parties lived in various states as the husband was transferred from one air force base to another. The couple raised two children, who were adults by the time of the divorce.
After completing twenty years of service, the husband was discharged from the air force in 1973. The family moved to the Tampa Bay area, and the husband went to work for Honeywell, Inc., as a program manager. At the time of the divorce proceeding, Mr. Mosbarger was earning in excess of $47,000 a year at Honeywell and was also receiving a military pension of $819 a month.
During the marriage, Mrs. Mosbarger worked outside the home at various jobs. In the later years of the marriage, she did clerical work and basic accounting. In 1986, she earned approximately $8,500.
Mrs. Mosbarger suffered from numerous health problems during the marriage. In the summer of 1986, she injured her back in a boating accident. In addition to physical problems, she also suffered from psychological problems during the marriage. Her husband encouraged her to receive psychological treatment, but she was unwilling to undergo testing or hospitalization.
In January 1987, Mr. Mosbarger moved out of the marital residence and into his own apartment. When he advised his wife that he wanted a divorce, she attempted suicide. She received emergency medical treatment at a local hospital and then spent a month in a psychiatric hospital. While in that hospital, she was served with the divorce papers and again attempted suicide.
Following her release from the hospital, Mrs. Mosbarger continued psychiatric treatment as an outpatient and returned to work in April 1987. In early June 1987, she went to her husband's place of employment to have him sign some papers. She observed him getting into his car with another woman and assumed they were romantically involved. Mrs. Mosbarger became irate and committed numerous acts over the next several days which can best be described as irrational. She repeatedly threatened to kill her husband. On June 7, 1987, she fired two shots from a revolver at her husband. Fortunately, she wounded a small oak tree rather than her husband. She was arrested at the scene and charged with attempted murder.
Mrs. Mosbarger spent the next twenty days in the Hillsborough County Jail. With the assistance of a psychiatrist who was a consultant to the sheriff, she was transferred to a psychiatric hospital. She remained hospitalized for the next five months.
*190 In September 1987, Mrs. Mosbarger was found competent to stand trial in her criminal proceeding. She pled guilty to attempted second-degree murder in exchange for a sentence including out-of-state counseling and probation for one year, followed by one year of Florida community control and two years of Florida probation.
The final hearing in the divorce proceeding occurred on December 18, 1987, while Mrs. Mosbarger was still hospitalized. By that time, she had made plans to accompany her sister to the state of Washington where she planned to live for the first year of her criminal sentence.
At the time of the final hearing, the trial court was required to equitably distribute assets and liabilities. Each party received an automobile and a portion of the furniture. The husband received his boat and motorcycle along with the liabilities encumbering those vehicles. He received all rights to his Honeywell pension which had a pre-tax valuation of approximately $31,000. The couple had sold their home and the proceeds had been placed in a money market account. Of that account, Mrs. Mosbarger received approximately $28,000 and her husband received the remaining $11,000. Up to this point, the distribution of assets was approximately equal. The trial court, however, then awarded the entire military pension to the husband.
The wife had incurred uninsured medical bills between the time of the parties' separation and the time of the final hearing which totaled more than $20,000. At least a portion of those bills were incurred prior to the filing of the divorce. Although the trial court could have made the husband responsible for these expenses and for future, reasonable medical expenses, Thompson v. Thompson, 325 So.2d 480 (Fla. 4th DCA 1975), the trial court made Mrs. Mosbarger primarily responsible for all of her medical bills.
Finally, the trial court awarded Mrs. Mosbarger permanent periodic alimony in the amount of $500 a month beginning in February 1988.[1] The trial court appears to have considered the military pension in determining this amount. The wife's financial needs, however, clearly exceeded $1,000 a month. While the husband may need to curtail his expenditures for boats, motorcycles, vacations, and gifts to afford the payment of periodic alimony without utilizing the military pension, it is clear that Mrs. Mosbarger has the need for greater support and Mr. Mosbarger has the ability to pay greater support.
Although the final judgment contains no express findings concerning the alimony award, it appears that the trial court based the size of the alimony award, in part, upon a decision to impute income to Mrs. Mosbarger during the year of her probation in Washington. The trial court reasoned that Mrs. Mosbarger's unemployment was caused by her criminal activity and should not result in an increased payment by the husband. The record, however, contains expert psychiatric testimony which suggests that Mrs. Mosbarger could not have worked during the year of probation and counseling in Washington due to her major depressive disorder. The expert testimony also raises the possibility that Mrs. Mosbarger may have employment difficulties due to her mental illness for an extended time.
Concerning the wife's request for attorney's fees, her counsel testified that he had expended approximately 122 hours in her representation. Of this amount, 98 hours related to the dissolution, and the remainder related to the criminal matters. The parties agree that $90 an hour was a reasonable rate and, thus, his total services were worth $10,962. The trial court, however, without the aid of expert testimony, found that forty hours would have been reasonable and the additional expenditure of time would not have been necessary but for the criminal complications. The trial court required the husband to pay only two-thirds of this reasonable fee, i.e., $2,400, without making the findings necessary to permit a reduction. Wilkins v. *191 Wilkins, 546 So.2d 44 (Fla. 4th DCA 1989) Thus, the wife was left with an obligation to her attorney in excess of $8,000.
In summary, the trial court awarded Mr. Mosbarger a significant distribution of marital assets. His liabilities are modest. Including the military pension and excluding alimony payments, his gross income exceeds $50,000. Mrs. Mosbarger received an equitable distribution which appears insufficient to pay her existing obligations for medical and legal services, and an award of alimony which is no more than 50% of the amount necessary to modestly support this fifty-year-old woman who is suffering from a psychiatric disorder that will undoubtedly limit her employment opportunities. While the trial court has broad discretion to fashion the overall distribution scheme in a divorce proceeding, Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), we find that the trial court abused its discretion by awarding an overall scheme which shortchanged the wife. See Villaverde v. Villaverde, 547 So.2d 185 (Fla. 3d DCA 1989); Franco v. Franco, 509 So.2d 405 (Fla. 1st DCA 1987); King v. King, 420 So.2d 630 (Fla. 4th DCA 1982).
The trial court was clearly bothered by the wife's attempt to kill her husband. We do not condone her actions, and she should not benefit in this proceeding because of her criminal conduct. Nevertheless, Florida's divorce system generally attempts to apply no-fault principles. Since adultery, as a statutorily recognized act of marital misconduct, is only considered when it translates into a greater financial need for the spouse or a depletion of the family resources, we are not inclined to believe that Mrs. Mosbarger's criminal conduct, which is not a statutorily recognized act of marital misconduct, should be treated more severely in this domestic proceeding. § 61.08(1), Fla. Stat. (1987); Noah v. Noah, 491 So.2d 1124 (Fla. 1986). See also West v. West, 414 So.2d 189 (Fla. 1982) (intentional tort claim barred by interspousal immunity, but divorce court may consider economic damages caused by the intentional tort in award of alimony to injured spouse). Beyond the consequential economic damage to the family unit caused by the criminal conduct, any additional penalty which Mrs. Mosbarger receives should occur within the jurisdiction of the criminal court under the facts of this case.
This case requires a careful delineation between Mrs. Mosbarger's isolated criminal activity and her more pervasive psychiatric illness. Before the trial court imputes income to Mrs. Mosbarger during her period of probation, that court should first expressly determine that she would have been employable, even in light of her mental illness, except for the criminal sentence. Cf. § 61.30(2)(b), Fla. Stat. (1987) (income imputable for child support only if parent is underemployed "absent physical or mental incapacity").
If Mrs. Mosbarger had been suffering from a severe, but curable, physical disease, one suspects that the trial court would have responded more generously to her predicament. When the mental disorder is clearly manifested and professionally diagnosed, we are not inclined to believe it should be treated with less compassion. See Simzer v. Simzer, 514 So.2d 372 (Fla. 2d DCA 1987); Lange v. Lange, 357 So.2d 1035 (Fla. 4th DCA 1978), cert. denied, 380 So.2d 1027 (Fla. 1980). Among the factors which the trial court must consider in awarding alimony are both the physical and emotional condition of each party. § 61.08(2)(c), Fla. Stat. (1987).
Upon remand, we do not compel the trial court to utilize any specific scheme to improve the wife's condition. That is a matter left to the trial court's sound discretion. We would comment, however, that this may be a case in which it is "preferable to deal with the pension rights as a marital asset rather than merely the source of support obligation." Diffenderfer v. Diffenderfer, 491 So.2d 265, 268 (Fla. 1986). Likewise, it may be appropriate for the husband to bear some of the wife's medical expenses or living expenses during their separation. Mahoney v. Gay, 516 So.2d 86 (Fla. 3d DCA 1987).
*192 We vacate the final judgment and remand to the trial court to conduct a new evidentiary hearing for purposes of revising, as appropriate, the equitable distribution, the alimony, and the award of attorney's fees.
Reversed and remanded for proceedings consistent herewith.
LEHAN, A.C.J., and PARKER, J., concur.
NOTES
[1] Beginning in August 1987, Mrs. Mosbarger had received $100 a month as temporary support during her confinement.