593 So.2d 222 (1991)
Joyce WAITE, Appellant,
v.
Beres WAITE, Appellee.
No. 89-868.
District Court of Appeal of Florida, Third District.
May 28, 1991.
On Motion for Rehearing and Rehearing February 11, 1992.
Touby, Smith, DeMahy & Drake, and Kenneth R. Drake, Miami, for appellant.
Parenti & Falk, and James C. Blecke, Miami, for appellee.
Before BASKIN, LEVY and GERSTEN, JJ.
On Motion for Rehearing and Rehearing En Banc February 11, 1992.
BASKIN, Judge.
Joyce Waite appeals a final summary judgment entered in favor of Beres Waite, her former husband, in an action she filed to recover damages for assault, battery, and negligence. We reverse.
At the time of the incident giving rise to Mrs. Waite's lawsuit against Mr. Waite, the parties were husband and wife. Without provocation, Mr. Waite attacked Mrs. Waite with a machete, striking her repeatedly, and causing severe and permanent injuries. In her affidavit, Mrs. Waite stated that she "suffered a compound fracture completely through [her] left tibia, a compound fracture of [her] left fibula, and a slicing fracture through [her] left ulna. The lower portion of [her] left leg was nearly hacked off." (Emphasis in original). During the episode Mr. Waite also attacked several members of Mrs. Waite's family with the machete. He was convicted of attempted murder, aggravated battery, and aggravated assault. Some time later, the parties were divorced. Subsequently, Mrs. Waite filed this action.
Mr. Waite, through his homeowner's insurer, filed a motion for summary judgment, arguing that his former wife's lawsuit was barred by the doctrine of interspousal tort immunity because the parties were married at the time of the attack. The trial court agreed and entered the judgment under review.
In Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988), the Florida Supreme Court receded from a long line of cases when it held that the doctrine of interspousal tort immunity is abrogated to the extent of liability insurance where traditional policy considerations for maintaining the doctrine do not exist. Mrs. Sturiano was injured when the car in which she was being driven by Mr. Sturiano struck a tree. Mr. Sturiano died as a consequence of the accident. Mrs. Sturiano filed a lawsuit against her husband's estate to recover damages resulting from his negligence. In holding that the interspousal tort immunity doctrine did not bar Mrs. Sturiano's claim, the court stated that "[a]ctions between spouses must be barred when the policy reasons for maintaining the doctrine exist, such as the fear of disruption of the family or other marital discord, or the possibility of fraud or collusion." *223 Sturiano, 523 So.2d at 1128. The court decided, however, that in the absence of such policy considerations the interspousal immunity doctrine is abrogated to the extent of available insurance. Sturiano.
When the Florida Supreme Court stated, "the common law unity concept is no longer a valid justification for the doctrine of interspousal immunity," Sturiano, 523 So.2d at 1128, it recognized marital partners' increased capacity to sue each other. The court's reasoning, in refusing to apply the doctrine of interspousal tort immunity as a bar to Mrs. Sturiano's suit, is applicable to the case before us.
Here, the claim would neither create disharmony nor support collusion. Barring Mrs. Waite's action will not preserve or promote Waite family harmony. Mr. Waite's egregious conduct[1] was so extreme that his victim would be unlikely to conspire with him for the purpose of defrauding an insurance company. Furthermore, there has been no suggestion of collusion in the record. Thus, the policy reasons in support of the doctrine do not exist.
Although we recognize that in the past an injured spouse was required to seek compensation in the dissolution proceeding, Hill v. Hill, 415 So.2d 20 (Fla. 1982); Roberts v. Roberts, 414 So.2d 190 (Fla. 1982), we question whether that rule remains viable after Sturiano.[2] Appellee argues that the earlier case of West v. West, 414 So.2d 189 (Fla. 1982), bars Mrs. Waite's action. Mrs. West alleged that she sustained a triple fracture of her left ankle when her husband intentionally threw her to the floor. West, 414 So.2d at 189. The West court held that a wife could not bring a post-dissolution suit against her former husband for personal injuries caused by his intentional tort on the ground that the lawsuit was barred by the doctrine of interspousal tort immunity. West, 414 So.2d at 190. The subsequent Sturiano decision abrogating immunity to the extent of insurance coverage undermines appellee's argument.
We find no legal impediment to holding that Mrs. Waite enjoys no lesser status before the court than do the other injured family members and may recover to the extent of available insurance.[3] The intentional tort was so extreme that it eradicated the policy considerations that might justify the barring of claims.[4] The Sturiano decision abrogated immunity to the extent of insurance coverage in cases lacking the policy considerations it set forth.
Finally, we note that the common law bar to interspousal intentional tort claims, *224 reiterated in West, has been superceded by section 741.235, Florida Statutes (1985), in actions seeking damages for the intentional tort of battery.[5] A statutory enactment "supersedes the common law and, therefore, abrogates common-law defenses in situations covered by the statute." Kilpatrick v. Sklar, 548 So.2d 215, 216 (Fla. 1989); Shands Teaching Hosp. & Clinics, Inc. v. Smith, 497 So.2d 644 (Fla. 1986); Belcher Yacht, Inc. v. Stickney, 450 So.2d 1111 (Fla. 1984); cf. Dressler v. Tubbs, 435 So.2d 792 (Fla. 1983). The statute delineates Florida's public policy abrogating interspousal tort immunity in actions for battery. It is clear that West no longer bars actions predicated on battery claims in cases that post-date the statute. Because Mrs. Waite's claim predated the statute, she cannot enjoy its benefits. However, today the tort of battery is entirely outside the former bar of interspousal tort immunity.
Applying the Supreme Court's reasoning in Sturiano, we reverse the final summary judgment and remand for further proceedings.
Reversed and remanded.
LEVY, J., concurs.
GERSTEN, Judge.
I respectfully dissent.

I.

BASIS FOR DISSENT
Fealty fuels the passion of this dissent. The majority, supplanting its opinion for that of the Florida Supreme Court, reverses a summary judgment which was, as a matter of law, correct. Therefore, because in my heart I am committed to the law, I submit that this court should follow the law, affirm the summary judgment, and certify the question to the Florida Supreme Court.
The central issue of this appeal concerns the doctrine of interspousal immunity. The facts in this case compel the abrogation of this doctrine. However, it is not within the power, province, or purview of this appellate court to reverse the Florida Supreme Court. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
In applying the inflexible doctrine of interspousal immunity to the facts of this case, one is left with a sense of dismay; a lingering feeling that our basic concepts of fairness and what is right have been stricken by the fetid touch of an archaic doctrine. In spite of multiple attacks, this doctrine exists.

II.

HISTORICAL ANALYSIS OF THE DOCTRINE OF INTERSPOUSAL IMMUNITY

A.

BRIEF ORIGIN
The concept that a husband and wife are immune from claims against each other can be said to have its origins in the ancient biblical concept that, upon marriage, the husband and wife became one.[1] This concept was incorporated into English common law where the wife was considered to have merged into the husband, and, as part of him, could not contract with him or bring an action against him:
By marriage, the husband and wife are one person in law: that is, the very being or existence of the woman is suspended during marriage, or at least is incorporated *225 and consolidated into that of the husband... .
1 W. Blackstone, Commentaries [*] 442.
This fiction of marital unity was considered to outlive the marriage and to exist even after divorce. See Phillips v. Barnet, 1 Q.B.D. 436 (1876) (where a former wife brought an action against her former husband for assault and battery which occurred during the period of coverture).
Like many other common law rules, the doctrine of interspousal immunity was also incorporated into American case law. In one of the earliest cases, the Supreme Judicial Court of Maine ruled that the doctrine of interspousal immunity barred a former wife from suing her former husband for an assault and battery, which occurred during the marriage. The court stated:
Divorce cannot make that cause of action which was not a cause of action before divorce. The legal character of an act of violence caused by husband upon wife and of the consequences that flow from it, is fixed by the condition of the parties at the time the act is done. If there be no cause of action at the time, there never can be any.
Abbott v. Abbott, 67 Me. 304, 306 (1877).
Interspousal immunity was incorporated into Florida law in 1829, by the adoption of all common and statutory law of England. See § 2.01, Fla. Stat. (1989).

B.

THE EMANCIPATION ACTS
Through a series of legislative acts, commonly referred to as emancipation acts, the rights of married women increased significantly. These acts[2] legalized the individual, separate holding of property by married women. By liberally construing these emancipation acts, courts in a number of states chipped away at the interspousal immunity doctrine.[3]
In 1950, the Florida Supreme Court considered the effect of Florida's emancipation act on the interspousal immunity doctrine. In Corren v. Corren, 47 So.2d 774 (Fla. 1950), the court rejected the argument that Florida's emancipation act destroyed the fictional unity of marriage and explained:
[T]he so-called emancipation act did not so affect the marriage relationship that the husband and wife were thenceforward permitted to go their separate ways, but instead were still mates residing in a common home, each making in his own way a contribution to the marriage venture.
As we have already commented, this fundamental relationship does not seem directly affected by the provisions of organic and statutory law with reference to the woman's dominion over her own property... .
Corren, 47 So.2d at 775.
The court refused to modify or abrogate the common law doctrine, reasoning that any change should be accomplished through legislative enactment. Corren, 47 So.2d at 776.

III.

MOVEMENT TOWARD ABROGATION OF INTERSPOUSAL IMMUNITY AND ITS 
IMPACT IN FLORIDA
Thirty-two states have totally abolished interspousal immunity and fifteen states have abrogated it for intentional and/or negligent torts.[4] Further, section 895F of *226 the Restatement (Second) of Torts (1979), repudiates the doctrine.
In Florida, section 708.08(1), Florida Statutes (1989), originally passed in 1943, empowered a married woman to:
[T]ake charge of and manage and control her separate property, to contract and to be contracted with, to sue and be sued, to sell, convey, transfer, mortgage, use, and pledge her real and personal property and to make, execute, and deliver instruments of every character without the joinder or consent of her husband in all respects as fully as if she were unmarried.
A married woman in Florida cannot only contract; she can even contract with her husband. § 708.09, Fla. Stat. (1989). A married woman can also sue her husband to enforce contract and property claims. Dodson v. National Title Insurance Co., 159 Fla. 371, 31 So.2d 402 (1947).
Further, since October 1, 1985, the doctrine no longer applied to the intentional tort of battery.[5] § 741.235, Fla. Stat. (1989).
Nevertheless, Florida continues to apply the doctrine.[6]Raisen v. Raisen, 379 So.2d 352 (Fla. 1979), cert. denied, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980). The doctrine exists because of policy considerations of preserving family harmony and preventing collusive claims.
In spite of Florida's adherence to these policy considerations, many other jurisdictions have rejected them as illusory and ineffectual. In one of the latest cases abrogating the doctrine, the Mississippi Supreme Court considered the case of a wife who was assaulted and battered by her husband. Burns v. Burns, 518 So.2d 1205 (Miss. 1988). In abrogating the doctrine, that court rejected the policy grounded in domestic tranquility:
The idea that maintenance of interspousal immunity will promote the public interest in domestic tranquility is wholly illusory. If one spouse commits against the other an act which, but for the immunity, would constitute a tort, the desired state of matrimonial tranquility is necessarily destroyed. But common sense suggests the peace is destroyed by the act of the offending spouse, not the lawsuit filed by the other. Beyond that, maintenance of the immunity surely cannot prevent injured spouses from harboring ill will and anger. Seen in this light, our traditional rule of interspousal immunity appears incapable of achieving the end claimed for it. Instead it leaves injured spouses without adequate or complete remedies. It is also noted that remedies incident to divorce and criminal prosecution are not adequate for the protection sought in this type of intentional tort.
Burns, 518 So.2d at 1210. Similarly, the Mississippi Supreme Court also rejected the argument that the doctrine somehow prevents suits founded in fraud and collusion:
It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we must deny relief to a person otherwise entitled simply because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffectual.
Burns, 518 So.2d at 1210 (quoting Klein v. Klein, 58 Cal.2d 692, 26 Cal. Rptr. 102, 376 P.2d 70 (1962)).
In Florida, the doctrine has not always precluded recovery. In Gaston v. Pittman, 224 So.2d 326 (Fla. 1969), the Florida Supreme Court permitted recovery in a case involving a divorced woman's claim against her ex-husband for an antenuptial tort. The court abrogated the common law *227 principle that the wife had lost her right of action upon marriage to the tortfeasor.
Similarly, in other actions between spouses, the Florida Supreme Court has receded from the common law rule and permitted the action to proceed. See Dressler v. Tubbs, 435 So.2d 792 (Fla. 1983) (where heirs of wife were permitted to recover from husband's aircraft liability insurer in a wrongful death action, after husband and wife perished in crash of airplane piloted by husband); Burgess v. Burgess, 447 So.2d 220 (Fla. 1984) (where interspousal tort immunity was found not to bar an action for money damages by wife for her husband's unlawful electronic interception of her telephone conversations).
Although grounded on a statutory exception to the doctrine, Burgess v. Burgess, 447 So.2d at 220, can be said to support an important policy, to permit recovery by a spouse who is the object of outrageous and egregious intentional behavior by the other spouse:
[The spouse's behavior,] by nature, undermines the faith and trust upon which the institution of marriage is founded. A rule of law which leaves such repugnant behavior unsanctioned can hardly be said to preserve the marital unit.
Burgess, 447 So.2d at 223.
The facts of this case are more repugnant than the facts in Burgess. How much more can an intentional life-threatening attack upon the wife undermine the faith and trust of marriage?

IV.

FLAWS IN THE MAJORITY OPINION
Because the protection of the new statute is unavailable to appellant, this court must follow the law as it existed at the time of the incident. The law at that time precludes recovery by appellant now.
The case law addressing interspousal immunity has developed along two distinct lines. One line deals with negligence. In these cases, i.e. automobile accident cases, the Florida Supreme Court has receded from interspousal immunity and permitted one spouse to recover for another spouse's negligence.
The other line of cases concerns intentional torts. In intentional tort cases, the Florida Supreme Court has steadfastly maintained interspousal immunity, holding that proper recourse is recovery through dissolution proceedings.
The majority relies on Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988). In Sturiano, the Florida Supreme Court considered the application of interspousal immunity in an action brought by a widow against her husband's estate. The widow's action was for personal injuries she suffered while a passenger in an automobile driven by her late husband.
The majority cites Sturiano for the proposition that the doctrine is no longer valid. However, in Sturiano, the Florida Supreme Court merely did away with the application of the long-standing concept of the fiction of marital unity, and ruled that the doctrine of interspousal immunity did not bar the action. The court stated:
The doctrine of interspousal tort immunity has its origins in the fiction that the marriage of two people creates a unified entity of one singular person [footnote omitted]. The reasoning was that a person or entity cannot sue itself. Despite dicta to the contrary in prior opinions of this Court, we believe that this outdated policy consideration can no longer be regarded as a valid reason to bar actions. We no longer live in an age where the wife is subservient to her husband.
... .
Thus "the common law unity concept is no longer a valid justification for the doctrine of interspousal immunity."
Sturiano, 523 So.2d at 1127-1128 (quoting Raisen v. Raisen, 379 So.2d at 357). The court still found that interspousal immunity barred those actions where the other policy considerations remained:
Several other reasons to bar interspousal actions, however, still exist under certain conditions. Domestic tranquility, peace and harmony in the family unit, and the possibilities of fraud or collusion are the most frequently cited policy reasons for *228 maintaining interspousal immunity. In cases where these considerations apply, the doctrine of interspousal immunity shall continue to bar actions between spouses.
Sturiano, 523 So.2d at 1128.
Like Sturiano, 523 So.2d at 1126, the policy reasons that would support the doctrine are not present in this case: (1) there is no fear of disharmony or collusion; (2) there are no lineal descendants of Joyce and Beres Waite and thus no family unit to be disrupted; (3) the egregiousness of the injuries preclude any collusion or fraud; and (4) the family unit could not possibly be more disrupted after the attempted murder of one spouse by the other and the subsequent criminal trial, in which the spouse was the accusatory witness.
In Sturiano, the Florida Supreme Court held:
[U]nder the circumstances of this case, we hold that when no such policy considerations exist, the doctrine of interspousal tort immunity is waived to the extent of applicable liability insurance.
Sturiano, 523 So.2d at 1128.
I would like to reach the same result as the majority in this case. However, precedent, directly on point, precludes that result. Hill v. Hill, 415 So.2d 20 (Fla. 1982) (interspousal immunity doctrine should not be modified to permit recovery by a wife for damages from her husband for malicious prosecution, false imprisonment, and abuse of process); West v. West, 414 So.2d 189 (Fla. 1982) (proper remedy for former wife who suffered an injury when her former husband threw her to the floor was in dissolution action, and therefore, wife could not maintain an action for an intentional tort against the former husband); Roberts v. Roberts, 414 So.2d 190 (Fla. 1982) (interspousal immunity barred action by widow against deceased husband's estate for intentional tort committed by husband).
The majority questions the viability of these cases after the decision in Sturiano. Yet, Sturiano did not address Hill, West, and Roberts. Nothing in Sturiano abrogates the holdings of these cases. Sturiano involved an automobile negligence case. Hill, West, and Roberts involved intentional torts committed by one spouse against the other. Like in this case, the former wife in West was seriously injured by the former husband.
In West, 414 So.2d at 189, the Florida Supreme Court considered the claim of a wife who sought recovery from her former husband, for intentionally throwing her to the floor, causing a triple fracture of her ankle. The question certified to the court was:
Whether a former spouse can maintain an action in tort against the other spouse for an intentional tort allegedly committed during marriage where such marriage has since been dissolved by divorce.
Citing Hill, 415 So.2d at 20, the court answered the question in the negative. As in Hill, the court held that the only recovery the former spouse could have for such an intentional tort was under the dissolution proceeding.[7] Nothing in Sturiano rejects or abrogates the holdings in West, Roberts, or Hill.
Sturiano did not abrogate the interspousal immunity doctrine for intentional torts. The court, in Sturiano, reasoned that upon the death of a spouse, all policy considerations regarding marital disharmony and collusion no longer existed in an automobile personal injury action.
A simple analysis of post-Sturiano cases furnishes further proof that Sturiano does not mandate the majority's result. Four cases decided after Sturiano v. Brooks considered whether to apply the doctrine. In those cases dealing with negligent torts, the spouse was permitted recovery. See Government Employees Insurance Company v. Fitzgibbon, 568 So.2d 113 (Fla. 5th DCA 1990); Lambert v. Indian River Electric, Inc., 551 So.2d 518 (Fla. 4th DCA 1989). Thus, in the area of negligence, the appellate courts followed Sturiano and permitted recovery.
*229 However, the line of cases that addresses recovery by, or from, a spouse, former spouse, or deceased spouse, based on a claim of intentional tort, unequivocally applied the doctrine. Thus, in Treciak v. Treciak, 547 So.2d 169 (Fla. 5th DCA 1989) and Mosbarger v. Mosbarger, 547 So.2d 188 (Fla. 2d DCA 1989), the other two post-Sturiano cases, interspousal immunity barred recovery.
I agree with our sister court's conclusion in Treciak, a post-Sturiano case:
Initially, the application of the doctrine of interspousal immunity to the facts of this case may seem to render a harsh and unjust result. However we recognize that the Florida Supreme Court has consistently refused to chip away at this doctrine even in hard cases. We leave to them, as we must, the decision of when to adopt a [sic] overall change in philosophy and substantial modification of this difficult area of the law.
Treciak v. Treciak, 547 So.2d at 169.

V.

CONCLUSION
Because no facts can be more compelling than the facts in this case, because the doctrine has been eroded, because the legislature has expressly shown its intent to diminish the doctrine by permitting actions for the intentional tort of battery, and, finally, because I believe we would be usurping the power of the Florida Supreme Court and the Florida legislature to reach the majority's result, I would certify the following question as one of great public importance:
WHETHER A FORMER SPOUSE CAN MAINTAIN AN ACTION AGAINST THE OTHER FORMER SPOUSE FOR AN INTENTIONAL TORT COMMITTED DURING THE MARRIAGE WHERE SUCH MARRIAGE HAS SINCE BEEN DISSOLVED BY DIVORCE AND NO OTHER POLICY REASONS WOULD PREVENT RECOVERY?

VI.

EPILOGUE
The concept that a husband should not be permitted to abuse his wife is, by far, not a novel one. As early as the thirteenth-century, Jewish law stated:
A man is forbidden to beat his wife; and is liable, moreover, for any injuries suffered by her.[8]
My hope is that by responding in the affirmative to the question, the Florida Supreme Court would allow us to return to the more enlightened attitudes of thirteenth-century Talmudic law, regarding this issue, and permit this woman recovery.

APPENDIX

STATES TOTALLY ABROGATING INTERSPOUSAL IMMUNITY OR PARTIALLY ABROGATING IT AS TO INTENTIONAL AND/OR NEGLIGENT TORTS

Rule fully abrogated:
Alabama 1931 Penton v. Penton 223 Al. 282,
 135 So. 481
Alaska 1963 Cramer v. Cramer 379 P.2d 95
Arkansas 1957 Leach v. Leach 227 Ark. 599,
 300 S.W.2d 15

*230
California 1962 Klein v. Klein 58 Cal.2d 692,
 26 Cal. Rptr. 102,
 376 P.2d 70
Connecticut 1914 Brown v. Brown 88 Conn. 42,
 89 A. 889
Indiana 1972 Brooks v. Robinson 259 Ind. 16,
 284 N.E.2d 794
Kansas 1987 Flagg v. Loy 241 Kan. 216,
 734 P.2d 1183
Kentucky 1953 Brown v. Gosser 262 S.W.2d 480
Maine 1980 MacDonald v. MacDonald 412 A.2d 71
Michigan 1971 Hosko v. Hosko 385 Mich. 39,
 187 N.W.2d 236
Minnesota 1969 Beaudette v. Frana 285 Minn. 366,
 173 N.W.2d 416
Mississippi 1988 Burns v. Burns 518 So.2d 1205
Montana 1986 Noone v. Fink 222 Mont. 273,
 721 P.2d 1275
Nebraska 1979 Imig v. March 203 Neb. 537,
 279 N.W.2d 382
New Hampshire 1915 Gilman v. Gilman 78 N.H. 4,
 95 A. 657
New Jersey 1978 Merenoff v. Merenoff 76 N.J. 535,
 388 A.2d 951
New Mexico 1975 Maestas v. Overton 87 N.M. 213,
 531 P.2d 947
New York 1974 State Farm Mut. Auto Ins.
 Co. v. Westlake 35 N.Y.2d 587,
 364 N.Y.S.2d 482,
 324 N.E.2d 137
North Carolina 1920 Crowell v. Crowell 180 N.C. 516,
 105 S.E. 206
North Dakota 1932 Fitzmaurice v. Fitzmaurice 62 N.D. 191,
 242 N.W. 526
Ohio 1985 Shearer v. Shearer 18 Ohio St.3d 94,
 480 N.E.2d 388
Oklahoma 1938 Courtney v. Courtney 184 Okla. 395,
 87 P.2d 660
Pennsylvania 1981 Hack v. Hack 495 Pa. 300,
 433 A.2d 859
South Carolina 1932 Pardue v. Pardue 167 S.C. 129,
 166 S.E. 101
South Dakota 1941 Scotvold v. Scotvold 68 S.D. 53,
 298 N.W. 266
Tennessee 1983 Davis v. Davis 657 S.W.2d 753
Texas 1987 Price v. Price 732 S.W.2d 316
Utah 1980 Stoker v. Stoker 616 P.2d 590
Washington 1972 Freehe v. Freehe 81 Wash.2d 183,
 500 P.2d 771
West Virginia 1978 Coffindaffer v. 161 W. Va. 557,
 Coffindaffer 244 S.E.2d 338
Wisconsin 1926 Wait v. Pierce 191 Wis. 202,
 209 N.W. 475
Wyoming 1987 Tader v. Tader 737 P.2d 1065
Rule abrogated as to intentional torts:
Idaho 1949 Lorang v. Hays 69 Idaho 440,
 209 P.2d 733
Kansas 1982 Stevens v. Stevens 231 Kan. 726,
 647 P.2d 1346
Missouri 1986 Townsend v. Townsend 708 S.W.2d 646
Oregon 1955 Apitz v. Dames 205 Or. 242,
 287 P.2d 585

*231
Rule of immunity imposed by statute, but not applicable to intentional
torts resulting in physical harm:
Illinois Ch. 40, § 1001, Ill. Ann. Stat. (1987 Supp.)
Rule abrogated for outrageous intentional torts:
Maryland 1978 Lusby v. Lusby 283 Md. 334,
 390 A.2d 77
Rule abrogated for intentional tort of battery:
Florida § 741.235, Fla. Stat. (1989)
Rule abrogated for cases sounding in negligence:
Maryland 1983 Boblitz v. Boblitz 296 Md. 242,
 462 A.2d 506
Missouri 1986 S.A.V. v. K.G.V. 708 S.W.2d 651
Oregon 1988 Heino v. Halper 306 Or. 347,
 759 P.2d 253
Rule abrogated for all personal injury actions:
Iowa 1979 Shook v. Crabb 281 N.W.2d 616
Rule abrogated for vehicular torts:
Arizona 1982 Fernandez v. Romo 132 Ariz. 447,
 646 P.2d 878
Colorado 1935 Rains v. Rains 97 Colo. 19,
 46 P.2d 740
Idaho 1975 Rogers v. Yellowstone
 Park Co. 97 Idaho 14,
 539 P.2d 566
Massachusetts 1976 Lewis v. Lewis 370 Mass. 619,
 351 N.E.2d 526
Nevada 1974 Rupert v. Stienne 90 Nev. 397,
 528 P.2d 1013
Rhode Island 1978 Digby v. Digby 120 R.I. 299,
 388 A.2d 1
Vermont 1973 Richard v. Richard 131 Vt. 98,
 300 A.2d 637
Virginia 1971 Surratt v. Thompson 212 Va. 191,
 183 S.E.2d 200

PER CURIAM.
The motions for rehearing and rehearing en banc are denied. We certify the following question as one of great public importance:
WHETHER STURIANO v. BROOKS, 523 So.2d 1126 (Fla. 1988), PERMITS A CLAIM BY A FORMER SPOUSE FOR BATTERY AGAINST THE OTHER SPOUSE, COMMITTED DURING THE MARRIAGE, AND PRIOR TO THE EFFECTIVE DATE OF SECTION 741.235, FLORIDA STATUTES (1985), WHERE THE CLAIM IS LIMITED TO THE EXTENT OF INSURANCE COVERAGE, THE SPOUSE WAS CONVICTED OF ATTEMPTED FIRST DEGREE MURDER STEMMING FROM THE BATTERY, AND THE EGREGIOUS NATURE OF THE INJURIES DEMONSTRATES THAT THE POLICY CONSIDERATIONS ENUNCIATED IN STURIANO  "FEAR OF DISRUPTION OF THE FAMILY OR OTHER MARITAL DISCORD, OR THE POSSIBILITY OF FRAUD OR COLLUSION"  WERE NOT PRESENT WHEN THE BATTERY WAS COMMITTED?
GERSTEN, Judge.
I respectfully dissent.
Based upon the reasoning set forth in my dissent of May 28, 1991, I must dissent from the denial of the motion for rehearing and rehearing en banc. Further, the certified question, as framed, fails to properly present the issue of whether interspousal tort immunity prevented recovery in this *232 action. Rather, the certified question limits the issue presented to an application of Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988).
Instead, I urge the Florida Supreme Court to address the question presented in my dissent. I implore the Supreme Court, as would a supplicant, to unequivocally abolish this insidious doctrine.
NOTES
[1] In her complaint Mrs. Waite describes the conduct as "abusive, malicious and committed with wreckless [sic] abandon[,]" and as having been "attributed to mental delusion, insanity or incompetency."
[2] We are unable to subscribe to the interpretation of post-Sturiano cases in the dissent: Mosbarger v. Mosbarger, 547 So.2d 188, 191 (Fla. 2d DCA 1989); Treciak v. Treciak, 547 So.2d 169, 169 (Fla. 5th DCA 1989); Government Employees Ins. Co. v. Fitzgibbon, 568 So.2d 113 (Fla. 5th DCA 1990); Lambert v. Indian River Elec., Inc., 551 So.2d 518 (Fla. 4th DCA), review denied, 563 So.2d 632 (Fla. 1990). Those cases are not persuasive. The Mosbarger court merely found that the wife's criminal activities did not justify inequitable property and alimony awards. In Treciak, 547 So.2d at 169, "the possibility of further disruption of the family unit," a policy reason enunciated in Sturiano, existed. Family harmony does not exist for the Waites; they have no dependents or children, unlike the parties in Roberts v. Roberts, 414 So.2d 190, 191 (Fla. 1982), where the court held that a tort claim was barred because the claim "could adversely affect the dependent family beneficiaries, particularly minor children."

In Fitzgibbon, the court did not permit the spouse to recover from her deceased husband's insurer because the policy contained a family exclusion clause. In Lambert, the court permitted the wife to recover damages from the owner of the vehicle negligently driven by her husband. The court did not address Sturiano. In neither Fitzgibbon nor Lambert did the complainant recover from the spouse.
[3] The other injured persons entered settlement agreements in their lawsuits against Mr. Waite.
[4] The Supreme Court has already distinguished these types of cases on their facts. In Sturiano, the estate's guardian ad litem argued that under the holding of Snowten v. United States Fidelity & Guar. Co., 475 So.2d 1211 (Fla. 1985), Mrs. Sturiano's claim should be barred. The Supreme Court rejected the contention, distinguishing Snowten, on its facts. Sturiano, 523 So.2d at 1128.
[5] In 1985, the Florida legislature adopted Section 741.235, Florida Statutes. Laws 1985, ch. 85-328, § 1. That section provides: "The common law doctrine of interspousal tort immunity is hereby abrogated with regard to the intentional tort of battery, and the ability of a person to sue another person for the intentional tort of battery shall not be affected by any marital relationship between the persons." The attack on Mrs. Waite occurred prior to the effective date of the statute.
[1] "Therefore shall a man leave his father and his mother, and shall cleave unto his wife, and they shall be one flesh." Genesis 2:24.
[2] See, e.g., Ch. 708, Fla. Stat. (1989)
[3] Alabama: Johnson v. Johnson, 201 Ala. 41, 77 So. 335 (1917) (abrogated immunity as to assault and battery); California: Self v. Self, 58 Cal.2d 683, 26 Cal. Rptr. 97, 376 P.2d 65 (1962) (abrogated immunity as to assault and battery); Colorado: Rains v. Rains, 97 Colo. 19, 46 P.2d 740 (1935) (abrogated immunity as to automobile negligence); Kentucky: Brown v. Gosser, 262 S.W.2d 480 (Ky. 1953) (abrogated immunity as to automobile negligence); Michigan: Hosko v. Hosko, 385 Mich. 39, 187 N.W.2d 236 (1971) (abrogated immunity as to automobile negligence); South Carolina: Prosser v. Prosser, 114 S.C. 45, 102 S.E. 787 (1920) (abrogated immunity as to willful battery); South Dakota: Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266 (1941) (abrogated immunity as to automobile negligence).
[4] See appendix.
[5] Recovery under this statute is unavailable to appellant because the attack occurred in 1984.
[6] Other jurisdictions where interspousal immunity is still applied are: Delaware: Alfree v. Alfree, 410 A.2d 161 (Del. 1979), dismissed, 446 U.S. 931, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980); Georgia: Ga. Code Ann. § 19-3-8 (Michie Supp. 1985); Hawaii: Peters v. Peters, 63 Haw. 653, 634 P.2d 586 (1981); Louisiana: La. Rev. Stat. Ann. § 9:291 (West Supp. 1985) (immunity not available as a defense where the couple is judicially separated); District of Columbia: Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910).
[7] In Roberts v. Roberts, 414 So.2d 190 (Fla. 1982), the court even precluded recovery from a deceased spouse when the claim was based on an intentional tort.
[8] Horowitz, G., The Spirit of Jewish Law (1973) (quoting Rabbi Israel of Krems interpreting Talmudic law based on the rabbinical conferences of the Rhine countries held between 1200 and 1223).