618 So.2d 1360 (1993)
Beres WAITE, Petitioner,
v.
Joyce WAITE, Respondent.
No. 79463.
Supreme Court of Florida.
May 27, 1993.
James C. Blecke, and Norman M. Waas, Parenti, Falk & Waas, P.A., Miami, for petitioner.
Kenneth R. Drake of Touby Smith DeMahy & Drake, P.A., and Frank A. Abrams, Miami, for respondent.
KOGAN, Justice.
We have for review Waite v. Waite, 593 So.2d 222 (Fla. 3d DCA 1991), which certified the following question of great public importance:
Whether Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988), permits a claim by a former spouse for battery against the other spouse, committed during the marriage, and prior to the effective date of section 741.235, Florida Statutes (1985), where the claim is limited to the extent of insurance coverage, the spouse was convicted of attempted first degree murder stemming from the battery, and the egregious nature of the injuries demonstrates that the policy considerations enunciated in Sturiano  "fear of disruption of the family or other marital discord, or the possibility of fraud or collusion"  were not present when the battery was committed.
Waite, 593 So.2d at 231 (on denial of rehearing). We rephrase the question as follows:
Does the doctrine of interspousal immunity remain a part of Florida's common law?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
In 1984, Joyce Waite and other members of her family were attacked by her husband, who inflicted substantial injuries upon them with a machete. He subsequently was convicted of several crimes, *1361 including attempted murder. Joyce Waite divorced him. Later, she filed suit seeking a recovery of damages against a home-owner's insurance policy. On the husband's motion, the trial court dismissed the cause as being barred by the doctrine of interspousal immunity. See Raisen v. Raisen, 379 So.2d 352 (Fla. 1979), modified, Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988). The Third District reversed based on Sturiano.
In Sturiano, 523 So.2d at 1128, we held that the doctrine of interspousal immunity no longer is applicable when the public policy reasons for applying it do not exist. These policy reasons are judicial avoidance of acts that could disrupt the family or foster marital discord, or where there is a strong possibility of fraud or collusion between husband and wife. Based on this holding, we found in Sturiano that the doctrine did not bar a wife's claim filed against the insurer of a deceased husband when the factual claim before us arose from the same accident in which the husband died and when the claim did not exceed the limits of liability.
Since Sturiano was issued, this Court and its advisory commissions have had an opportunity to review legal issues relevant to the doctrine of interspousal immunity. As a result of that review, we now find that there no longer is a sufficient reason warranting a continued adherence to the doctrine of interspousal immunity. As we previously have held, the common law will not be altered or expanded by this Court unless demanded by public necessity or to vindicate fundamental rights. In re T.A.C.P., 609 So.2d 588, 594 (Fla. 1992). Here, we find that both public necessity and fundamental rights require judicial abrogation of the doctrine.
First, we find no reason to believe that married couples are any more likely to engage in fraudulent conduct against insurers than anyone else. An otherwise meritorious claim should not be foreclosed simply because a person is married to a wrongdoer.
The fact is that when couples collude in a fraud, many devices exist to detect the deception whether or not the couples are married. Insurance companies can and do hire their own lawyers and investigators to examine suspicious claims. When testifying, the claimants are subject to impeachment and discrediting because of their own financial stake in the outcome. They are subject to the court's contempt power, to the criminal laws for perjury and various forms of fraud, to civil lawsuit, and even to the racketeering and forfeiture statutes authorizing (among other things) the seizure of property used to further their crimes. If these other devices are adequate for unmarried couples, then we believe they also must be equally adequate for those with a marriage license. See Art. I, § 2, Fla. Const.
Second, we do not believe that the types of lawsuits prohibited by the doctrine of interspousal immunity, if allowed, are likely to foster unwarranted marital discord. Under present law, for example, an abused spouse still might file criminal charges against the abuser, can sue in equity over property interest, and can file for an injunction for protection. We believe that marital disharmony will not be increased merely because of the addition of a lawsuit for the various types of personal injury at issue here.
Finally, we note that thirty-two states have abrogated the doctrine of interspousal immunity completely, Waite v. Waite, 593 So.2d 222, 225, 229-31 (Gersten, J., dissenting), leaving Florida in a shrinking minority. The doctrine also has been resoundingly rejected by the single most respected authority on American tort law. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 122, at 902-04 (5th ed. 1984). We particularly agree with Keeton's observation that the very act of creating exceptions to the doctrine, as this Court repeatedly has done, renders the doctrine increasingly less justifiable. Id. at 904. We also find absolutely no evidence that fraud and collusion have been promoted or encouraged to any undue extent in the majority of states that have abrogated the doctrine, some many decades ago.
*1362 For the foregoing reasons, the result reached below is approved and the certified question as rephrased here is answered in the negative.
It is so ordered.
BARKETT, C.J., and SHAW, J., concur.
HARDING, J., concurs with an opinion in which KOGAN, J., concurs.
McDONALD, J., concurs in result only with an opinion in which OVERTON, J., concurs.
GRIMES, J., concurs in part and dissents in part with an opinion in which OVERTON, J., concurs.
HARDING, Justice, concurring.
The abrogation of the doctrine of interspousal immunity will not damage what the marital relationship is designed to be  a special relationship between partners who share love, common interests, concerns, hopes, and endeavors. As the majority notes, if one of those partners commits a wrong against the other, the injured party should not be foreclosed from bringing an otherwise meritorious claim just because he or she is married to the wrongdoer.
I concur that the common law will only be altered or expanded by this Court in order to vindicate fundamental rights or when demanded by public necessity. Majority at 1361. I believe that time has come. The doctrine of interspousal immunity is rooted in the common law and is not a statutory creation. As such, it is appropriate for this Court to abrogate the doctrine rather than defer to legislative action.
Justices Grimes and McDonald raise the specter of a proliferation of lawsuits between spouses upon the abrogation of the doctrine of interspousal immunity. However, limiting litigation has never been the stated policy for the doctrine. Rather, the doctrine is based upon the dual public policies of fostering marital harmony and avoiding possible collusion or fraud between spouses.
The Legislature has already statutorily abrogated the doctrine with regard to the intentional tort of battery. Section 741.235, Fla. Stat. (1991). Florida law also permits a spouse to file a criminal complaint against a spouse, to seek an injunction for protection from that spouse's violence, and to sue in equity over property interests.[1] If the preservation of marital harmony is the compelling reason for maintaining interspousal immunity as to other personal tort actions, then that rationale should apply with equal force to these legal actions that the law permits one spouse to maintain against the other. Certainly, it is difficult to make any rational argument for interspousal immunity as to these permitted legal actions. Yet, such actions are just as likely, if not even more likely, to foster marital discord than are the personal tort actions that are barred by the doctrine of interspousal immunity.
Moreover, if the overriding concern is to prevent fraud or collusion by spouses in bringing such an action, then the remedy should be to expose the fraud rather than to discard all the honest claims along with the bad ones. As the majority notes, legal devices exist to detect possible collusion or fraud whether the parties are married or not. Majority at 1361. Thus, this policy does not warrant the continuation of the interspousal immunity doctrine.
Although the doctrine of interspousal immunity is one of long standing in Florida, fourteen of the thirty-two states that have completely abrogated the doctrine did so before 1970. See Waite v. Waite, 593 So.2d 222, 225, 229-31 (Fla. 3d DCA 1991) (Gersten, J., dissenting). In fact, Connecticut abandoned the doctrine nearly eighty years ago. The thirty-two states that have abrogated the doctrine have not suffered any adverse effects from that decision. I have found no evidence that marital relationships have been negatively impacted in those states, nor that the insurance industry has been brought to its knees.
*1363 For all of these reasons, I concur with the majority in finding no justification for Florida's adherence to this antiquated doctrine and favor its complete abrogation.
KOGAN, J., concurs.
McDONALD, Justice, concurring in result only.
The majority now accepts the position urged by the dissent in Raisen v. Raisen, 379 So.2d 352 (Fla. 1979). As I did in Raisen, I continue to believe that there are societal advantages of maintaining interspousal immunity as a concept. I am willing to, and have, examined particular circumstances to determine in a given situation whether an exception to this historical doctrine should be made. See Snowten v. United States Fidelity and Guar. Co., 475 So.2d 1211 (Fla. 1985). The question as certified by the district court of appeal is such a situation.[2] I do not agree, however, that the doctrine should be completely abolished. Bencomo v. Bencomo, 200 So.2d 171 (Fla. 1967), was sound when written and is sound today.
I am firmly convinced that the unfettered ability of one spouse to sue the other can, and likely will, place an undue strain on a marriage relationship. A spouse's threat to file such an action can equally do so. Finally, if a marriage does culminate in divorce, I can foresee multiple counts for damages being claimed by each spouse against the other for events that occurred during their marriage. The fault concept which was discarded in no fault dissolution proceedings will have a rebirth in a different form.
The step the majority takes is entirely too broad. The Legislature has abolished spousal immunity in intentional battery cases. Section 741.235, Fla. Stat. (1985). Had the Legislature felt it desirable to completely abolish the doctrine, it could have done so then. In any event, because of the action of the majority, I invite the Legislature to reexamine this issue and take whatever action it deems appropriate.
I would allow Joyce Waite's suit to proceed because this was an intentional battery, now legislatively excepted from immunity, and because the parties are now divorced.
OVERTON, J., concurs.
GRIMES, Justice, concurring in part, dissenting in part.
I agree with the abolition of interspousal immunity for intentional torts and therefore concur with the result reached in this case. However, I believe that the doctrine continues to serve a useful purpose in negligence actions.
This Court has emphasized that the purpose of interspousal immunity is to protect family harmony and resources. Hill v. Hill, 415 So.2d 20 (Fla. 1982). If one spouse sues another to obtain damages for negligent injuries and there is no liability insurance, how can it be said that such a lawsuit will not severely disrupt family harmony?[3] While family harmony may suffer less when liability insurance is involved, the temptation for collusion will dramatically increase. Compensation for injuries caused by the negligence of a person's spouse should come from medical and disability insurance or some other form of first-party insurance so that the question of fault does not become involved. See Ard v. Ard, 414 So.2d 1066, 1070 (Fla. 1982) (Boyd, J., dissenting) (criticizing partial abrogation of parental immunity on grounds similar to this opinion).
While discussions of interspousal immunity usually focus on personal injury actions, I also foresee a spate of lawsuits between spouses covering a wide range of torts including defamation, conversion, fraud, and property damage, and perhaps more creatively the negligent infliction of a disease, such as AIDS.
*1364 Despite continued academic criticism of the doctrine of interspousal immunity, the Legislature has declined to intervene, except for the passage of a recent statute abolishing the doctrine with respect to battery.[4] I would prefer to leave the question of whether one spouse can sue another in negligence to the Legislature which is better equipped to consider the ramifications which may result from permitting it.
OVERTON, J., concurs.
NOTES
[1] In Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988), this Court also held that a spouse can bring a negligence action to the extent of applicable liability insurance when the policy considerations of marital harmony and possible collusion do not exist.
[2] However, I did reject this view in Hill v. Hill, 415 So.2d 20 (Fla. 1982).
[3] If the injured spouse obtains a judgment and levies on the other's property, he or she will be well advised not to put the money in a joint bank account or the tortfeasor-spouse will be able to take it back again.
[4] Section 741.235, Florida Statutes (1991), was enacted subsequent to the conduct involved in this case and therefore cannot control our decision.