625 So.2d 69 (1993)
CHRYSLER CREDIT CORPORATION, Hill-Kelly Leasing, Inc., and Hill-Kelly Dodge, Inc., Appellants,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee.
No. 92-1579.
District Court of Appeal of Florida, First District.
September 22, 1993.
*70 R. Waylon Thompson & John N. Boggs, of Boggs & Thompson, Panama City, for appellant.
Stephen F. Bolton, of Moore, Hill, Westmoreland, Hook & Bolton, P.A., Pensacola, for appellee.
MICKLE, Judge.
Hill-Kelly Leasing, Inc. ("H-K Leasing" or "Appellant"), the sole remaining appellant, challenges the trial court's summary final judgment in favor of Appellee United Services Automobile Association ("U.S.A.A." or "Carrier"). We affirm.
In March 1989, Bruce Hagen owned two vehicles insured by U.S.A.A. On March 28, 1989, Hagen entered into a rental agreement with H-K Leasing to lease a Dodge automobile for travel to New Orleans because his own vehicle was not driveable at the time. While operating the rental car in Mississippi on April 4, 1989, Hagen was involved in a collision that resulted in his own death and that of his minor son, Nicholas Sean, a passenger.
The Estate of Nicholas Sean Hagen, through a personal representative ("P.R."), filed an action against H-K Leasing, Hill-Kelly Dodge, Inc., and Chrysler Credit Corporation, *71 claiming that the three defendants were vicariously liable as lessors of the rental car driven by lessee, Bruce Hagen. In turn, the three defendants, as third-party plaintiffs, filed an amended third-party complaint against the P.R. of the Estate of Bruce Hagen, based on common-law indemnity (Count I) and contractual indemnification (Count II), and against U.S.A.A., seeking declaratory relief (Count III) and damages for breach of contract (Count IV).
In essence, the declaratory relief count sought clarification on the following issues:
1. Whether as owner and lessor of the vehicle in question, H-K Leasing properly shifted the burden of primary insurance coverage to U.S.A.A., as third-party defendant, pursuant to section 627.7263, Florida Statutes;
2. Whether U.S.A.A. should provide the second level of coverage for amounts, if any, paid to the original plaintiff in excess of the amount required by applicable financial responsibility laws and the limits of the U.S.A.A. policy; and
3. Whether U.S.A.A. provided liability coverage for the P.R. of the Estate of Bruce Hagen in the indemnity action filed in Counts I and II.
H-K Leasing and the other third-party plaintiffs alleged that Bruce Hagen had assigned his rights under the U.S.A.A. insurance policy to them and that, as beneficiaries of said policy, they were entitled to coverage for the claims asserted against them. Additionally, it was alleged that the rental agreement shifted or assigned primary insurance coverage to U.S.A.A., as Hagen's carrier, pursuant to statute. See section 627.7263, Florida Statutes (1987). U.S.A.A. maintained that a family member exclusion in Hagen's U.S.A.A. policy precluded coverage for the Estate of Bruce Hagen as to any claims against it arising from the injury and death of the son. The trial court entered summary final judgment in favor of U.S.A.A. and dismissed with prejudice the third-party complaint of H-K Leasing and the other defendants.
We must read Hagen's insurance policy with U.S.A.A. in its entirety to determine coverage. Prudential Property & Casualty Insur. Co. v. Bonnema, 601 So.2d 269, 271 (Fla. 5th DCA 1992). In Part A (Liability Coverage), the "insuring agreement" states:
We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
"Covered person" as used in this Part means:
1. You [named insured] or any family member for the ownership, maintenance or use of any auto or trailer.
2. Any person using your covered auto.
3. For your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
The rental car driven by Bruce Hagen is covered by the definition of "your covered auto" including any car not owned by the named insured, while used as a temporary substitute because the other vehicle is out of normal use due to breakdown, repair, or servicing.
Interpreting the language in the "insuring agreement" in Part A quoted above, H-K Leasing argues that as the owner of the covered rental car, it is an "organization" and "covered person" for accidents arising out of the acts or omissions of Bruce Hagen in operating that automobile.
The "other insurance" subsection of Part A of the U.S.A.A. originally provided as follows:
If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
*72 Pursuant to an insurance policy amendment, the last line of this section was deleted and replaced with the following provision:
However, we will provide primary insurance for a vehicle you do not own if the vehicle is leased by you under a written lease agreement and you have agreed to provide coverage for your operation of the vehicle.
The rental agreement between H-K Leasing and Bruce Hagen manifests an intent to shift the burden of primary insurance coverage to Hagen's carrier, U.S.A.A., pursuant to the applicable statute, section 627.7263, Florida Statutes (1987), which provides:
(1) The valid and collectible liability insurance or personal injury protection insurance providing coverage for the lessor of a motor vehicle for rent or lease shall be primary unless otherwise stated in bold type on the face of the rental or lease agreement. Such insurance shall be primary for the limits of liability and personal injury protection coverage as required by ss. 324.021(7) and 627.736.
(2) Each rental or lease agreement between the lessee and the lessor shall contain a provision on the face of the agreement, stated in bold type, informing the lessee of the provisions of subsection (1) and shall provide a space for the name of the lessee's insurance company if the lessor's insurance company is not to be primary.
The rental agreement expressly states the following:
NOTICE: Florida Statute 627.7263 provides that the rental/lease customer's liability or personal injury insurance is primary Insurance Company or Agent USAA Policy # XXXXXXXXXXXX Phone # 
Notwithstanding the shift of primary coverage, however, we believe the trial court properly construed the overall insurance policy in favor of the Carrier and against H-K Leasing. Part A (Liability Coverage) includes a section designating "Exclusions," Section "A" of which contemplates situations for which the Carrier does not provide liability coverage. Pursuant to an "Amendment of Policy Provisions," the following language was added to the policy prior to the events at issue here:
LIABILITY COVERAGE EXCLUSION ENDORSEMENT
LIABILITY COVERAGE
The following exclusion is added to Part A, Section A:
We do not provide Liability Coverage for you or any family member for bodily injury to you or any family member.
U.S.A.A. successfully defended itself in the lower tribunal on the ground that this "family member" exclusion precluded liability coverage for the Estate of Bruce Hagen as to any claims against said estate arising from the son's injury and death.
The law of Florida provides that, absent a statutory prohibition, an insurance company may limit coverage by means of an appropriate family member exclusion. Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla. 1977). The Florida Supreme Court has held that "[e]xclusionary clauses in liability insurance policies are always strictly construed." Demshar v. AAACon Auto Transport, Inc., 337 So.2d 963, 965 (Fla. 1976). In Fitzgibbon v. Government Employees Insur. Co., 583 So.2d 1020 (Fla. 1991), the supreme court recognized that a carrier may be immune from liability on a claim against the estate of a deceased family member. The injured wife in Fitzgibbon attempted to sue the estate of her husband, who had died in the same accident. The liability coverage exclusion there provided: "We do not cover any bodily injury to any insured or any member of an insured's family residing in the insured's household." Government Employees Insur. Co. v. Fitzgibbon, 568 So.2d 113 (Fla. 5th DCA 1990). Claiming benefits under third-party tort or uninsured motorist provisions of the policy, the wife asserted that the family exclusion was invalid because her husband was killed. That argument was rejected, and the exclusionary provision was held valid and operable to bar the insurance claim against the decedent husband's estate. 583 So.2d at 1021.
We believe the decisions cited by U.S.A.A. support its position that an exclusion can apply to actions brought by the *73 estate of a deceased family member against either a living family member or against the estate of a deceased family member. See Amica Mut. Insur. Co. v. Wells, 507 So.2d 750 (Fla. 5th DCA 1987) (family exclusion clause barred claims between family members where the husband and wife, one the driver and the other a passenger, were killed and a suit was asserted on behalf of decedents' P.R.); Orston v. Allstate Insur. Co., 502 So.2d 526 (Fla. 3d DCA 1987) (affirming final declaratory judgment in favor of carrier because family exclusion clause barred coverage for death of the insured's wife, even though both the husband and wife were deceased). In Linehan v. Alkhabbaz, 398 So.2d 989 (Fla. 4th DCA 1981), the policy provision excluded liability coverage for bodily injury to any insured or any member of the family of any insured residing in the same household as the insured. Alkhabbaz loaned her automobile to her aunt, Marianna Linehan, who died as a result of an accident that occurred while Marianna's daughter (Laura Linehan) was driving. The decedent's P.R. sued the decedent's daughter and Alkhabbaz's insurance carrier. Relying on the exclusion, the carrier asserted that, because the decedent and her daughter had resided in the same household, the policy afforded no coverage for a negligence claim arising from the daughter's conduct. The Fourth District Court affirmed summary judgment in favor of the carrier. 398 So.2d at 990.
H-K Leasing, as lessor of the vehicle, and Bruce Hagen could not vary the contractual provisions in the insurance policy to which Hagen and U.S.A.A. had already agreed. As the trial court held, the P.R. of the Estate of Nicholas Sean Hagen stands in the same shoes as did Bruce Hagen with respect to the applicability of the family member exclusion. Further, we find support in Florida Farm Bureau Insur. Co. v. Government Employees Insur. Co., 387 So.2d 932 (Fla. 1980), for U.S.A.A.'s argument that the instant exclusion provision bars third-party or contribution actions against a family member or that individual's estate. In Florida Farm Bureau, the supreme court ruled that where an insured elected not to purchase additional coverage but obtained an insurance policy with a family exclusion clause, a third party could not complain because the policy did not cover the contribution judgment. Id. at 934. A party seeking contribution cannot alter the policy coverage merely by suing in a third-party capacity.
We construe the U.S.A.A. policy as excluding direct claims by family members (or their estates) against other family members (or their estates). The family exclusion provision expressly amends Part A, Section A, which deals with "Exclusions" and contemplates instances in which liability coverage is not provided. Key provisions defining "covered person," on which H-K Leasing relies, are included in "Part A-Liability Coverage" and, thus, are subject to the limitations of the exclusionary clause. This policy also excludes third-party or contribution actions against family members or their estates arising from the injury or death of other family members.
We find Appellant's argument as to the meaning and scope of "bodily injury" unconvincing in light of the amendatory endorsement defining "bodily injury" as "including death that results" from bodily harm, sickness or disease. See Skroh v. Travelers Insur. Co., 227 So.2d 328, 330 (Fla. 1st DCA 1969) (interpreting "bodily injury" to include any death that may result from such injury).
Although H-K Leasing contends that the Carrier is statutorily liable despite the provisions of the exclusion, we believe that if statutory liability is to be imposed in instances such as the case sub judice, the language of the statute should clearly provide imposition of liability notwithstanding any exclusions to the contrary. See Grant v. New Hampshire Insur. Co., 613 So.2d 466 (Fla. 1993) (section 627.7263 does not authorize an insured to unilaterally convert policy providing umbrella liability coverage into one providing primary coverage by merely entering into car rental agreement that purports to shift primary liability to the lessee's auto insurance carrier); Southeastern Fidelity Insur. Co. v. Cole, 493 So.2d 445 (Fla. 1986). When Bruce Hagen assigned to H-K Leasing his rights to the liability insurance policy provided to him by U.S.A.A., the assignee took that assignment subject to the specific *74 language in the policy engrafting the family member exclusion onto Part A. See City Nat'l Bank of Coral Gables v. H & B Constr. Corp., 183 So.2d 704 (Fla. 3d DCA 1966). The rental agreement between H-K Leasing and Hagen did not rewrite the U.S.A.A. auto insurance policy, eliminate the exclusion, or expand the coverage. Given the specific effect of the family exclusion clause, the additional insured provision or omnibus insured clause does not create additional coverage.
Like the trial court, we find no merit to the contention that the numbering of the policy endorsements creates an ambiguity. Any alleged misnumbering does not detract from the exclusionary effect of the family provision at issue.
AFFIRMED.
BARFIELD, J., concurs.
ZEHMER, C.J., specially concurs with opinion.
ZEHMER, Chief Judge (specially concurring).
I am compelled to concur in the majority opinion because it applies the family exclusion clause to deny coverage in a manner that is consistent with the cited cases recognizing the validity of this exclusion. But I do so with considerable reservation for the following reasons.
It seems to me that the policy reasons that led the supreme court to approve the family exclusion provision as not being against public policy are no longer recognized in this state. To assure the availability of full automobile liability insurance coverage to Florida citizens, the public policy of this state, either by common law decision announced by the supreme court or by statutory provisions in chapter 627, Florida Statutes, should recognize the need to afford Florida insureds coverage against all of the potential liabilities for monetary damages due to the insured's negligence that are cognizable under Florida law, and public policy should not permit casualty insurers doing business in this state to seemingly offer and provide coverage for all potential liabilities but then exclude coverage as to family members. The family member exclusion leaves insureds without coverage for substantial potential liabilities that are now clearly recognized by Florida law.
In Reid v. State Farm and Cas. Co., 352 So.2d 1172 (Fla. 1978), the supreme court held "that provisions of automobile liability insurance policies excluding from coverage members of the insured's family or household are valid" and not against the public policy of the state, noting that:
The reason for the exclusion is obvious: to protect the insurer from over friendly or collusive lawsuits between family members.
Id. at 1173. The supreme court has followed this holding in subsequent decisions that have reaffirmed the quoted reason for its validity. E.g., Fitzgibbon v. Government Employees Ins. Co., 583 So.2d 1020 (Fla. 1991); Florida Farm Bureau Ins. Co. v. Government Employees Ins. Co., 387 So.2d 932 (Fla. 1980). Thus, at least since the Reid decision, the public policy of Florida has permitted this exclusion to be incorporated in automobile liability policies issued in this state only to prevent "over friendly or collusive lawsuits between family members." When these decisions were issued, Florida law recognized the doctrine of interspousal immunity and other restrictions on the rights of family members to bring damage suits against other family members for negligently caused injuries.
Since the above cited decisions were handed down, however, the supreme court, in Waite v. Waite, 618 So.2d 1360 (Fla. 1993), has abolished the doctrine of interspousal immunity, citing the following reasons:
In Sturiano, 523 So.2d at 1128,[1] we held that the doctrine of interspousal immunity no longer is applicable when the public policy reasons for applying it do not exist. These policy reasons are judicial avoidance of acts that could disrupt the family or foster marital discord, or where there is a strong possibility of fraud or collusion between husband and wife. Based on this holding, we found in Sturiano that the doctrine did not bar a wife's claim filed *75 against the insurer of a deceased husband when the factual claim before us arose from the same accident in which the husband died and when the claim did not exceed the limits of liability.
Since Sturiano was issued, this Court and its advisory commissions have had an opportunity to review legal issues relevant to the doctrine of interspousal immunity. As a result of that review, we now find that there no longer is a sufficient reason warranting a continued adherence to the doctrine of interspousal immunity. As we previously have held, the common law will not be altered or expanded by this Court unless demanded by public necessity or to vindicate fundamental rights. In re T.A.C.P., 609 So.2d 588, 594 (Fla. 1992). Here, we find that both public necessity and fundamental rights require judicial abrogation of the doctrine.
First, we find no reason to believe that married couples are any more likely to engage in fraudulent conduct against insurers than anyone else. An otherwise meritorious claim should not be foreclosed simply because a person is married to a wrongdoer.
The fact is that when couples collude in a fraud, many devices exist to detect the deception whether or not the couples are married. Insurance companies can and do hire their own lawyers and investigators to examine suspicious claims. When testifying, the claimants are subject to impeachment and discrediting because of their own financial stake in the outcome. They are subject to the court's contempt power, to the criminal laws for perjury and various forms of fraud, to civil lawsuit, and even to the racketeering and forfeiture statutes authorizing (among other things) the seizure of property used to further their crimes. If these other devices are adequate for unmarried couples, then we believe they also must be equally adequate for those with a marriage license. See Art. I, § 2, Fla. Const.
Id. at 1361.
It seems to me that this same rationale is equally applicable to lawsuits between other family members (such as father and son), with the result that the underlying basis for holding the family member exclusion in automobile insurance policies consistent with public policy does not comport with current Florida Supreme Court decisions. For this reason, it is entirely appropriate for the supreme court to revisit the policy reasons that currently allow automobile insurance policies to exclude coverage of the insured's liability to other family members. Not only does the continued validity of this exclusion leave the insured family member without coverage to protect against financial loss pursuant to this potential liability, it also deprives the injured party of access to a source of financial responsibility that non-family members clearly have pursuant to the law.
I recognize that the family member exclusion has been treated by the court as a matter of freedom of contract between the parties on the assumption that the insured remains free to contract for insurance coverage that does not have this exclusion. Florida Farm Bureau Ins. Co. v. Government Employees Ins. Co., 387 So.2d at 934. And the court has indicated reluctance to compel coverage in cases now excluded by the family member clause. Fitzgibbon v. Government Employees Ins. Co., 583 So.2d at 1021. I do not know whether automobile insurers in this state currently write coverage without this exclusion. I suspect, however, that the presence of this exclusionary clause in most automobile insurance policies issued in Florida casts considerable doubt on the assumed availability of automobile insurance coverage at a reasonable cost that does not include this exclusion. And I have not heard of an insurer explaining to an insured that coverage can be offered without this exclusion.
In any event, in light of the public policy findings made in the Waite case, the continued viability of this exclusion should again be addressed by the supreme court as a matter of public policy. Likewise, the matter should be taken up by the legislature for the purpose of assuring that persons purchasing automobile insurance policies in this state can obtain insurance coverage for all potential liability in money damages at a reasonable cost, since that is the stated purpose of insurance *76 regulation in chapter 627. See § 627.031(1), Fla. Stat. (1991).
NOTES
[1] Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988).