724 So.2d 109 (1998)
David C. BEERS, Appellant/Cross-Appellee,
v.
Martha D. BEERS, Appellee/Cross-Appellant.
No. 97-1059.
District Court of Appeal of Florida, Fifth District.
October 23, 1998.
Rehearing Denied January 25, 1999.
*111 David C. Beers, Longwood, pro se.
Norman D. Levin of Norman D. Levin, P.A., Longwood, for Appellee/Cross-Appellant.
ROUSE, R. K., Jr., Associate Judge.
Appellant/former husband, David C. Beers appeals, and former wife Martha D. Beers, cross appeals, from the final judgment of dissolution entered below. We affirm in part, reverse in part and remand for a reassessment of the equitable distribution award.
The parties were married on June 9, 1973, and have two minor children. Throughout the marriage, the former wife was a homemaker and the primary caregiver for the family. The former husband is a personal injury attorney and was the family's sole breadwinner.
*112 On July 10, 1995, the former husband filed a petition for dissolution of marriage, seeking primary residential custody of the children and requesting an equitable distribution of the marital property.[1] On July, 31, 1995, the former wife filed an answer and counter-petition, joining the corporation, David C. Beers, P.A., as a party to the action. In the counter-petition, she alleged that the former husband maintained marital assets in the corporation of David C. Beers, P.A. Moreover, she claimed that during the marriage he had depleted marital assets in furtherance of an adulterous relationship.[2]
On August 24, 1995, the former husband filed a motion to disqualify the trial judge, which motion was denied on September 5. A second motion to disqualify was filed in April of 1997, and this was also denied.
On September 17, 1996, the former wife filed a third-amended counter-petition for dissolution, which contained four counts and which joined one Rhonda Scott as a party-defendant. Count III alleged claims for civil conspiracy, fraud and constructive fraud/breach of fiduciary duty against the husband, individually, against David C. Beers, P.A., and against Scott, with whom the former husband allegedly had committed adultery during the latter years of the marriage. A separate jury trial on the issues contained within Count III was conducted on September 30 and October 4, 1996. The jury returned a verdict finding that the former husband and Scott had conspired to commit constructive fraud upon the former wife during the marriage. The jury also found that the former husband had concealed material facts from the former wife which prevented or delayed her from discovering the fraud. The former wife was awarded $132,164 in compensatory damages for constructive fraud, but no damages for the conspiracy, and $200,000 in punitive damages. The trial court, however, vacated the jury verdict against the former husband, stating that "issues relating to the marital estate are solely within the province of the dissolution of marriage judge." Notwithstanding the setting aside of the jury verdict against the former husband, the trial court proceeded to enter a judgment against Scott in the amount of $132,164 on the basis that "the jury found that Rhonda Scott was a co-conspirator as to the constructive fraud and determined that the amount of damages due to the marital estate through Martha Beers was $132,164.00." Scott never appealed this final judgment.
In dividing the marital property, the trial court awarded the former wife the marital residence, 401K plan assets, contingency fees due the former husband because of certain personal injury cases settled after the petition for dissolution was filed, and other marital assets, all of which totaled $242,592.19. Additionally, the court ordered the former husband to pay to the former wife $17,500 per year for ten years in furtherance of equitable distribution. As a result, the former wife received a total award of $417,592.19 in equitable distribution.
The court awarded the former husband stock in his professional corporation, the cash value of some life insurance, and other property. The court also assigned to him payments totaling $274,800 which had been made to Scott within two years of the filing for the petition for dissolution, and the $132,164 final judgment against Scott. The former husband's equitable distribution award totaled $450,564.
The trial court imputed $50,000 in annual income to the former husband, in addition to his regular income, based upon evidence as to past earnings and earning potential attributable to plaintiffs' personal injury cases. Primary residential custody of the two minor children was granted to the former wife, and the former husband was ordered to pay child support in the amount of $1,698 per month. The former wife was also awarded permanent periodic alimony in the amount of $4,000 per month, and the former husband was directed to maintain life insurance in the *113 amount of $500,000 in order to secure the alimony award.

I. ALIMONY AND CHILD SUPPORT
The former husband claims the lower court erred in imputing income to him and in determining the amount of child support and alimony. His claims are not persuasive.
There was no error in the imputation of income to the former husband or in the computation of the child support and alimony awards. The court may, in its discretion, impute income to a spouse based upon past earnings and earning potential. Warren v. Warren, 629 So.2d 1079 (Fla. 3d DCA 1994). In addition, it was proper to order the former husband to obtain a life insurance policy to secure the alimony award to the former wife. Sobelman v. Sobelman, 541 So.2d 1153 (Fla.1989).
The former husband also challenges the award of alimony on the basis that subsection 61.08(2), Florida Statutes (1997), is unconstitutional because it requires a consideration of the standard of living enjoyed during the marriage. Subsection 61.08(2) lists seven factors that the trial judge must consider in determining a proper award of alimony, one of which is "the standard of living established during the marriage." The former husband contends that the "standard of living" factor is not only unconstitutionally vague, but that it also violates due process and equal protection in that it requires the trial court to maintain the standard of living established by one spouse during the marriage. The former husband's contention on this issue is without merit.
The "standard of living established during the marriage" is but one of the factors that the trial court must consider under subsection 61.08(2) in determining a proper award of alimony. Furthermore, and contrary to the former husband's assertion, the statute does not require a trial judge to maintain the standard of living established by the former wife during the marriage, without regard to the former husband's financial ability to pay the award. It is well-settled that a trial court must base an award of alimony upon the ability to pay the award as well as the recipient's financial needs in light of the standard of living enjoyed during the marriage. O'Neal v. O'Neal, 410 So.2d 1369 (Fla. 5th DCA 1982); see also Ginsburg v. Ginsburg, 610 So.2d 655 (Fla. 1st DCA 1992). Considered in this context, the "standard of living" factor clearly passes constitutional muster.

II. MOTIONS TO DISQUALIFY
In the motion to disqualify filed in August, 1995, the former husband alleged that he had submitted an affidavit in 1987 in federal court opining that the trial judge, who was then a practicing attorney, had filed a pleading containing no justiciable issue of law or fact.[3] According to the former husband, the 1987 incident created a well-grounded fear that he would not receive a fair trial. The trial judge denied the motion to disqualify, holding that the motion was both legally insufficient and improper in form. On April 29, 1997, the former husband filed a second motion for disqualification, which the trial judge also denied, finding it legally insufficient and untimely. The former husband contends that the trial court erred in refusing to recuse itself. We disagree.
The test of the legal sufficiency of a motion to disqualify is whether or not its content shows that the moving party has a well-grounded fear that he will not receive a fair trial at the hands of the judge. See Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981) (citing State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695 (Fla.1938)). Here, the mere filing of the affidavit in 1987attacking the pleading, not the pleaderis insufficient to prompt a reasonable attorney-litigant to fear that he could not receive a fair and impartial trial at the hands of the trial judge who had been the pleader.

III. EQUITABLE DISTRIBUTION

A. The $175,000.00 Cash Payment
As part of equitable distribution, the trial court ordered the former husband to *114 pay the former wife a sum of $175,000 $17,500 per year for a period of ten years. The former husband contends that this was improper because it is payable from his future nonmarital income and constitutes, in essence, an award of lump-sum alimony. We disagree. Pursuant to subsection 61.075(9), Florida Statutes (1997), a trial court, in order to do equity between the parties, "may, in lieu of or to supplement, facilitate, or effectuate the equitable division of marital assets and liabilities, order a monetary payment in a lump sum or in installments paid over a fixed period of time." It was, therefore, appropriate to award the cash payment to the former wife in furtherance of the equitable distribution scheme.

B. The Personal Injury Cases
On September 5, 1995, the trial court entered an injunction against the former husband, ordering him to deposit into an escrow account all post-petition income earned in excess of his regular incomein particular, the contingency fee proceeds derived from the settlement of personal injury cases. That injunction remained in effect until February 13, 1997, the date of entry of the amended final judgment of dissolution. At the time of dissolution, $20,353.19 remained in the escrow account.[4] The court characterized the $20,353.19 as a marital asset and awarded that sum to the former wife. The court also awarded to the former wife the $20,000 contingency fee which the former husband received in January, 1997 from the settlement of another of his personal injury cases. The former husband argues that the court erred in characterizing these assets as marital property subject to equitable distribution.
Whether the fees received as a result of the settlement of an attorney-spouse's personal injury cases constitute marital property depends on when the attorney-spouse was retained and actually performed work on those cases. If the work preceded the filing of the petition for dissolution, the fees may properly constitute marital property subject to equitable distribution, even though the fees were received after the filing of the petition. See Roberts v. Roberts, 689 So.2d 378 (Fla. 4th DCA 1997) (holding that contingency fee cases which had actually been settled at the time of distribution could be considered marital property for purposes of equitable distribution). On the other hand, if the attorney-spouse was retained and performed work on the cases after the filing of the petition, the fees would not constitute marital property. See § 61.075(6), Fla. Stat. (1997). In situations where the attorney-spouse is retained before the filing of the petition, but performs work both before and after the filing of the petition, the decision as to whether the fees received upon settlement constitute marital property is one that lies within the sound discretion of the trial judge. Here, the record on appeal is unclear as to when the former husband was retained and performed work. On remand, the trial court should make appropriate findings and distribute the fees received from the settlement of those cases accordingly.

C. Intentional Dissipation
The trial court found that the former husband fraudulently dissipated a total of $274,800 in assets within two years prior to the filing of the petition for dissolution of marriage. As a result, the court assigned the $274,800 in depleted assets to the former husband as part of his equitable distribution. Although the trial court found that the former husband had also depleted substantial additional marital assets before the two-year period immediately preceding the filing of the petition, the court refused to consider assigning any of that more remote depletion in dividing the marital assets becauseand only becauseit construed subsection 61.075(1)(i) as a statute of limitation. We conclude that subsection 61.075(1)(i) does not operate as a two-year statute of limitation, and that the more remote dissipation is a factor which may be considered by the trial court in determining equitable distribution.
*115 In Florida, the legal concept that the intentional dissipation of marital assets by one spouse during the marriage is a factor for consideration by the trial judge in dividing marital property may have first been addressed in an appellate decision in Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990), where the Fourth District described the dissipation of assets as a situation "where one spouse uses marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown" (citing Hellwig v. Hellwig, 100 Ill.App.3d 452, 55 Ill.Dec. 762, 426 N.E.2d 1087 (Ill.App.Ct. 1981)). Some three years later, the Florida Legislature enacted subsection 61.075(1)(i), Florida Statutes, which added the following as a factor for the trial court to consider in distributing the assets of the marriage:
The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.
[Emphasis supplied].
This factor is one of nine enumerated factors in subsection 61.075(1) which the trial court must consider in distributing the marital assets. Becker v. Becker, 639 So.2d 1082 (Fla. 5th DCA 1994). In addition to these nine specific factors, the trial court, pursuant to subsection 61.075(1)(j), should also consider "any other factors necessary to do equity and justice between the parties." At issue is whether the trial court is limited to considering dissipation occurring within the two-year time period preceding the filing of the petition of dissolution based upon subpart (i), or whether the trial court may, pursuant to subpart (j), consider dissipation occurring before the two-year period as a "factor[] necessary to do equity and justice between the parties." We conclude that the two-year time period set forth in subsection 61.075(1)(i) does not bar a trial court from considering, as an "other factor," dissipation of marital assets which occurs prior to the two-year period preceding the filing of the petition for dissolution.
Our conclusion in this regard is not contrary to the plain words of the statute, and is mandated by the primary purpose of subsection 61.075(1), which is to effectuate equity and justice between the parties to a dissolution proceeding. It would in some cases be impossible for a trial court "to do equity and justice between the parties" if it were unable to consider dissipation occurring more than two years before the filing of the petition for dissolution. If trial courts are precluded from considering such dissipation, wrongdoing spouses who intentionally waste marital assets during the course of the marriage would benefit from their misconduct. In addition, wrongdoing spouses who dissipate marital assets through fraud or concealment would be able to circumvent subsection 61.075(1)(i) by waiting two years from the time of dissipation before filing a petition for dissolution. Indeed, a wrongdoing spouse who intentionally wastes substantial marital assets would merely have to conceal that dissipation for two years and one day, in order to avoid any possibility of consideration of the dissipation by the trial court. Viewed in this light, it seems abundantly clear that subsection 61.075(1)(i) was not intended to operate as a statute of limitation.
Whether more remote dissipation should be considered is a determination best left to the sound discretion of the trial judge, based upon the factual circumstances of each case. For example, a court might refuse to consider the dissipation if the other spouse was aware of and accepting of it, and the marriage continued for a significant period of time thereafter. In such a situation, the dissipation might be deemed "ratified" or forgiven by the wronged spouse. Conversely, it would be entirely appropriate to consider a remote intentional dissipation of marital assets in situations where the wronged spouse was unaware of such dissipation, the dissipation was substantial, and where the offending spouse concealed the dissipation or accomplished the dissipation through fraud, artifice, deceit, or trick.
Here, the trial court found that the former husband, without the former wife's knowledge, fraudulently dissipated marital assets more than two years before filing the petition for dissolution. The trial court, however, declined to consider such dissipation, solely because it construed subsection 61.075(1)(i) *116 as a statute of limitation. Therefore, we remand for reconsideration of this issue. On remand, the trial court is not required to consider the total amount of marital assets dissipated by the former husband. Rather, it may, in its discretion, consider such dissipation as is necessary to do equity and justice between the parties.

D. The Judgment Against Scott
The former husband contends that the trial court erred in awarding him as a marital asset in equitable distribution the $132,164 final judgment entered against Scott in favor of the former wife. He asserts that because the jury found zero damages for the conspiracy to commit constructive fraud, the judgment entered against Scott is invalid. However, the final judgment against Scott was never appealed; as a result, the former husband's challenge to the validity of that judgment cannot be entertained.
The trial court, nevertheless, did err in classifying the judgment entered against Scott as a marital asset subject to equitable distribution. The action against Scott was commenced and the resulting judgment entered after the petition for dissolution was filed. Ordinarily, assets created or received by one spouse after the filing of a petition for dissolution are not properly identified as marital assets subject to equitable distribution. See § 61.075(6), Fla. Stat. (1997). However, personal injury judgments in favor of one spouse may be considered marital property under some circumstances, pursuant to the analytical approach adopted in Weisfeld v. Weisfeld, 545 So.2d 1341 (Fla. 1989). Under this approach, the portion of a judgment consisting of the sums awarded for such losses as medical expenses paid from marital funds and wages lost during the marriage may be considered marital property. This approach permits participation in the recoupment of such losses by the spouse who is not the judgment holder.
The Weisfeld approach has no application in the context of the instant case, where the judgment in favor of the former wife resulted from wrongful acts of the former husband causing a loss or reduction of marital assets. In circumstances such as these, it is not necessary to treat the judgment as a marital asset in order to ensure recoupment by the spouse who is not the judgment holder. In addition, the trial judge may consider the loss or depletion of marital assetsincluding more remote dissipation caused by the wrongful acts of one spouse when fashioning an appropriate equitable distribution. Because the judgment is the separate property of the former wife, and because there is no justification for treating it as a marital asset, the trial court should, on remand, classify it as a nonmarital asset of the former wife.

IV. TORT ACTION AGAINST SPOUSE
The trial court vacated the jury verdict against the former husband for constructive fraud/breach of fiduciary, stating that "issues relating to the marital estate are solely within the province of the dissolution of marriage judge." The trial court determined that because the constructive fraud/breach of fiduciary duty claim was based upon the former husband's depletion of marital assets during the marriage, such claim could not be brought as a separate cause of action in tort, but rather could be considered only within the context of the dissolution proceeding. The former wife contends that the trial court erred in setting aside the jury verdict against the former husband in view of the abolishment of the doctrine of inter-spousal immunity in Waite v. Waite, 618 So.2d 1360 (Fla. 1993). Moreover, the former wife argues that she should be permitted to sue the former husband in tort for fraud, as a separate cause of action, since remedies available in actions at lawi.e., punitive damagesare not available in dissolution proceedings, which are equitable in nature. We hold that the trial court correctly decided this issue, despite the apparent absence of any guidance from controlling Florida case law.
Constructive fraud is the term typically applied where a duty under a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken. Rogers v. Mitzi, 584 So.2d 1092 (Fla. 5th DCA 1991), rev. denied, 598 So.2d 77 (Fla.1992). Constructive fraud may be based on misrepresentation or concealment, *117 or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party. See Fulton v. Clewiston, Ltd., 100 Fla. 257, 129 So. 773 (Fla.1930). Although the spousal relationship is considered among the most confidential of all relationships, we hold that one spouse may not be sued by the other in tort for a breach of this confidential relationship which results in a loss of marital property, in the absence of a distinct agreement or transaction between the spouses.[5]See Smith v. Smith, 113 N.C.App. 410, 438 S.E.2d 457 (N.C.Ct.App.), review denied, 336 N.C. 74, 445 S.E.2d 37 (N.C.1994). Where no specific transaction or agreement exists between the spouses, the dissolution of marriage statute, specifically, subsection 61.075(1), provides the exclusive remedy where one's spouse has intentionally dissipated marital property during the marriage. Our holding here is not contrary to Waite, supra, which abrogated the doctrine of interspousal tort immunity. In our view, there simply is no cognizable tort claim for constructive fraud for a concealed dissipation of marital assets.[6]
Based upon the foregoing considerations, we remand for a recalculation of the equitable distribution award.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
GOSHORN and PETERSON, JJ., concur.
NOTES
[1] The former husband previously filed a petition for dissolution in June, 1990. The petition was unserved and subsequently dismissed for lack of prosecution. The parties never entered into a separation agreement.
[2] By the time of trial, she asserted that such depletion exceeded $600,000.
[3] This affidavit was filed in connection with proceedings conducted pursuant to section 57.105, Florida Statutes.
[4] Although the trial court originally valued the escrowed funds at $28,318, the court later reduced the value to $20,353.19 in its Order Related to Wife's Motion for Rehearing entered on March 24, 1997.
[5] The former wife contends that married couples should be held to the same standard as business partners, who have a fiduciary duty to account to the partnership for misappropriated partnership funds. Although it is beyond dispute that the utmost integrity and honesty should inhere in a marital relationship, we decline to recognize an action in tort for a spouse's violation of the financial duties associated with business partnerships. A marriage is not a business arrangement, and business partnerships are not governed by chapter 61.
[6] We do not address the propriety of the joinder of a separate count for conversion or fraudulent dissipation of nonmarital assets. See, e.g., Delahunty v. Massachusetts Mut. Life Ins. Co., 236 Conn. 582, 674 A.2d 1290 (Conn.1996), a decision cited by the former wife. Our decision also does not conflict with Snedaker v. Snedaker, 660 So.2d 1070 (Fla. 4th DCA 1995), which approved the pleading of a battery claim as a separate count in a dissolution action.