862 So.2d 48 (2003)
Eli LEVY, Appellant/Cross-Appellee,
v.
Miriam LEVY, Appellee/Cross-Appellant.
Nos. 3D03-0540, 3D02-2857, 3D02-2590.
District Court of Appeal of Florida, Third District.
October 1, 2003.
*50 Ricardo E. Pines, Coral Gables, for appellant/cross-appellee.
Bernardo Burstein, for appellee/cross-appellant, Miriam Bimblich, f/k/a Miriam Levy.
Lillana V. Avellan, for cross-appellee, Dora Rubinstein de Levy.
Before COPE, GERSTEN, and SHEVIN, JJ.
PER CURIAM.
Eli Levy ("former husband") appeals from a final judgment dissolving his marriage to Miriam Levy ("former wife"). The former wife cross-appeals the same final judgment of dissolution and also appeals a separate final judgment determining the former husband's child support obligation. We affirm.
The parties were married in 1986 in Caracas, Venezuela and have two minor children. By agreement of the parties, the former wife was a homemaker and primary caretaker for the family. She acquired no assets of her own and was entirely dependent economically on the former husband. In September 1999, the parties relocated to South Florida.
In February 2001, the former husband filed a petition for dissolution of marriage. That same day, the former wife filed an emergency petition for alimony and child support and an emergency motion seeking an ex parte temporary restraining order. The trial court issued an ex parte order which enjoined the former husband and his mother, Dora Rubinstein de Levy ("mother"), from transferring or dissipating any funds from either of their accounts. Subsequently, the trial court dissolved the temporary injunction with the exception of the Colonial Bank account that contained marital funds.
In September 2002, the trial court entered its first final judgment reserving jurisdiction on the issues of child support and attorney's fees. The trial court concluded that the former husband had over one million dollars in liquid assets available to him and that he had distributed these *51 funds beyond the reach of the former wife. The trial court imputed income to the former husband in the amount of $20,000 per month.
The trial court also determined that the former husband and former wife established a marital business, Astra Construction Corporation (Astra), capitalizing it with $300,000 of their funds. Astra was established for immigration purposes to help the former husband obtain his L-1 immigration visa. The trial court awarded Astra to the former husband. The trial court then awarded the former wife the proceeds of the sale of the parties' two homes ($250,000) and ordered the former husband to pay the former wife $75,000, in a lump sum alimony to balance the equitable distribution of assets. The trial court also ordered the former husband to pay all of the former wife's attorney's fees.
In a separate final judgment, the trial court determined that the former husband's monthly child support and health insurance obligation was $1,354.00 per month. The court deviated from the child support guidelines and ordered the former husband to pay $1,000 per month in child support because the former husband was responsible for the children's private school expenses.
As his first issue, the former husband contends that the trial court erred in awarding the former wife permanent alimony. The former wife contends on cross-appeal that the trial court erred in awarding her only $8,000 a month in permanent alimony. We disagree with both parties and find that the record supports the awarded permanent alimony.
The purpose of permanent alimony is to provide the needs and necessities as they have been established by the marriage of the parties. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). Here, the parties were married fourteen years. For alimony purposes, this falls in the upper portion of gray area marriages. See Thomas v. Thomas, 776 So.2d 1092 (Fla. 5th DCA 2001). In gray area marriages, there is no presumption for or against an award of permanent alimony. See Nelson v. Nelson, 721 So.2d 388 (Fla. 4th DCA 1998). Therefore, the trial court must utilize its discretion, in light of the statutory factors in determining whether an award of permanent alimony is appropriate.
The factors to be considered include the parties' earning ability, age, education, the duration of the marriage, the standard of living enjoyed during its course and the value of the parties estates. See § 61.08(2), Fla. Stat. (2000). The trial court considered these factors and applied them to the facts. The trial court found the parties were married fourteen years and considered that to be a long term marriage. The trial court considered the parties' earning ability and education and found the husband to be the sole income earner and found that, although the former wife had a college degree, she could not work lawfully in the United States in an income-producing job due to her immigration status.[1] The trial court also concluded that the parties enjoyed a very comfortable standard of living, both parties were relatively young, the former wife was thirty-five and the former husband was forty-five, and both were in good health. We find the award of permanent alimony was within the discretion of the trial court. See Canakaris, 382 So.2d at 1202.
*52 The former husband next contends that the trial court erred in its equitable distribution by awarding him the non-marital company, Astra and then balancing that award by giving the former wife marital assets. The former husband's argument is not persuasive.
The trial court properly found that Astra was a marital asset capitalized with marital funds. The former husband informed the Department of Justice in his L-1 Visa application that Astra was capitalized by the parties themselves, with $300,000 from their joint Swiss Lake Merrill Lynch account. We conclude that the trial court properly offset the award of the marital asset, Astra by awarding the former wife other marital property to balance the equitable distribution. See § 61.075(9), Fla. Stat. (2000); Canakaris, 382 So.2d at 1203 (Fla.1980).
The former wife contends on cross-appeal that the trial court erred in its equitable distribution by awarding her less than 50% of the proven marital assets. The gravamen of the former wife's claim of error is that the trial court failed to consider the former husband's dissipation of the parties' marital assets when determining equitable distribution. The trial court found that the former husband dissipated marital funds and the court took this into consideration when determining the equitable distribution. This is evidenced by the trial court awarding the former wife the proceeds of the sale of the parties' two homes and a lump sum amount. We will not disturb this sound exercise of the trial court's discretion. See Canakaris, 382 So.2d at 1203.
The former husband's third point on appeal is that the trial court erred in ordering the former husband to pay the former wife's attorney's fees. The trial court's findings of fact support the award of attorney's fees to the former wife. See Rosen v. Rosen, 696 So.2d 697 (Fla.1997).
The trial court found that the former husband engaged in litigation misconduct including testifying in a misleading fashion, not being forthright with his financial state of affairs, and failing to abide by the court's orders causing the wife to engage in unnecessary additional litigation. The court also found that this litigation misconduct caused the former wife to incur substantial costs. The trial court further concluded that the former husband is in a superior financial position to pay the former wife's attorney's fees as the former wife did not work and was unable to work because of her immigration status. We find the trial court did not abuse its discretion in awarding attorney's fees to the former wife. See Binker v. Binker, 781 So.2d 505 (Fla. 3d DCA 2001); Baker v. Baker, 754 So.2d 754 (Fla. 3d DCA 2000).
Next, the former wife contends the trial court erred in the amount of income it imputed to the former husband and in denying the former wife's motion to deviate upwards from the child support guidelines. We disagree on both issues.
The court may impute income to a spouse based on past earnings and earning potential. See Warren v. Warren, 629 So.2d 1079 (Fla. 3d DCA 1994). Here, the court determined that the parties' living expenses prior to separation were between $15,000.00 and $20,000.00 per month. The court also found that the former husband supplemented his income by withdrawing money from multiple off-shore accounts and that he received monthly funds from his mother. The former husband also listed an income of $20,000.00 on his mortgage loan application. Based on the foregoing, there was no error in the imputation of $20,000 per month in income to the former husband. See Hinton v. Smith, 725 So.2d 1154 (Fla. 2d DCA 1998).
*53 The trial court also did not err in determining child support. The determination of child support is within the sound discretion of the trial court, subject to the statutory guidelines and the test of reasonableness. See Scapin v. Scapin, 547 So.2d 1012 (Fla. 1st DCA 1989). The trial court correctly calculated each parties' obligations under the child support guidelines based on the former husband's $20,000 per month imputed income. The court then deviated from the guidelines and ordered the former husband to pay $1,000 per month in child support, as opposed to $1,354 per month because the former husband pays for the children's private school expenses. This was not error. See Thomas, 776 So.2d at 1094. The trial court's finding will not be disturbed on appeal because no abuse of discretion has been shown. See Canakaris, 382 So.2d at 1203.
The former wife also contends on cross-appeal that the trial court erred in denying her claim for constructive fraud against the mother. In support of this claim, the former wife alleges that the mother was a director of one of the parties' marital accounts, Swiss Lake Corporation and a signatory of another, Colonial Bank. The former wife alleges that the mother used these roles to dissipate these marital accounts and as such abused her fiduciary relationship with the former wife.
The trial court found that the accounts were depleted in violation of the court's injunction which ordered the former husband and the mother not to transfer or dissipate any funds from any of their accounts. However, the trial court found there was no evidence that the mother intended to become a fiduciary or assume a confidential relationship with the former wife and determined that the former husband was in control of the finances and dissipated the funds. We find the trial court properly decided this issue.
Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken. See Beers v. Beers, 724 So.2d 109 (Fla. 5th DCA 1998) citing Rogers v. Mitzi, 584 So.2d 1092 (Fla. 5th DCA 1991). Constructive fraud may be based on a misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party. See Beers, 724 So.2d at 116.
Here, the court found that it was the former husband, and not the mother, who was in control of the finances and who orchestrated the dissipation. There is nothing in the record to refute this finding. Furthermore, where there is no specific transaction or agreement between the spouses, the dissolution of marriage statute provides the exclusive remedy where one spouse has intentionally dissipated marital property during the marriage. See Beers, 724 So.2d at 116. Here, there is no record of an agreement between the parties and the trial court amply compensated the former wife through equitable distribution for the former husband's dissipation of marital assets. We find that the court did not abuse its discretion. There is no merit to this contention nor the remaining issues raised by the former wife in her cross-appeal.
In conclusion, finding no error in the former wife's remaining issues and finding no abuse of discretion in the rulings below, we affirm the final judgment of dissolution of marriage in all respects and affirm the final judgment determining the former husband's child support obligation.
Affirmed.
NOTES
[1] The former husband contends that under the Cuban Residency Act, the former wife could qualify to obtain employment but presented no evidence on the Act or its application to the former wife.