NO. COA14-417

NORTH CAROLINA COURT OF APPEALS

Filed: 2 December 2014

JO ANN WARD,

    Plaintiff,

    v.                           Wake County
                                       No. 11 CVS 4932

MARK E. FOGEL AND WILLIAM B.
WRIGHT, JR., as Co-Trustees under
certain trust agreements dated
February 1, 2005 and January 1,
2006; ROBERT E. WARD, III; and
ROBERT E. WARD, IV,

    Defendants.


Appeal by plaintiff from order entered 2 December 2013 by Judge Paul G. Gessner in Wake County Superior Court. Heard in the Court of Appeals 23 September 2014.

    *Brady Morton, PLLC, by Travis K. Morton, for plaintiff-appellant.*

    *Ward and Smith, P.A., by Gary J. Rickner, for defendants-appellees Mark E. Fogel and William B. Wright, Jr., co-trustees.*

    *Narron, O'Hale & Whittington, P.A., by Jason W. Wenzel, for defendant-appellee Robert E. Ward, III.*

    *Howard, Stallings, From & Hutson, P.A., by John N. Hutson, Jr., for defendant-appellee Robert E. Ward, IV.*


HUNTER, Robert C., Judge.

Jo Ann Ward ("plaintiff") appeals from an order granting summary judgment in favor of defendants Robert E. Ward, III ("Mr. Ward"); Robert E. Ward, IV ("Ward's son"); and Mark E. Fogel and William B. Wright, Jr., as co-trustees of the Robert E. Ward, III Irrevocable Trust Agreement ("the REW trust") and the Ward Family Irrevocable Trust Agreement ("the WF trust"). On appeal, plaintiff argues that the trial court erred in granting summary judgment for defendants because: (1) North Carolina superior court has subject matter jurisdiction over this dispute; (2) plaintiff's claims are not time-barred by the statute of limitations; (3) genuine issues of material fact exist as to plaintiff's claims for fraudulent inducement, constructive fraud, and breach of fiduciary duty; and (4) the "divorce clause" in the REW trust is void as contrary to public policy.

After careful review, we affirm the trial court's order in part, reverse the order in part, and remand for further proceedings.

**Background**

Plaintiff and Mr. Ward are residents of Florida, where they have both lived since approximately 2002. They married in North Carolina on 4 April 1987, but separated on 9 October 2009. On 4

June 2010, Mr. Ward filed an action against plaintiff for divorce and equitable distribution in Broward County, Florida ("the Florida divorce action").

During the marriage, Mr. Ward and others formed a business called Environmental Protection Services, Inc. ("EPS") in West Virginia. In 1997, after reacquiring a third owner's stock, Mr. Ward owned fifty percent of EPS. During deposition, Mr. Ward testified that he remembered discussing with the EPS co-owner, Keith Reid, how Mr. Reid's ex-wife acquired EPS stock through equitable distribution. On or about 1 February 2005, Mr. Ward conveyed his fifty percent interest in EPS to the REW trust. Mr. Wright, Mr. Ward's friend and business associate, advised him regarding the REW trust. At the time, Mr. Wright had been helping Mr. Ward and plaintiff with their financial questions. Mr. Wright introduced Mr. Ward to C. Wells Hall, III ("Mr. Hall"), who was the attorney that Mr. Ward hired to draft the REW trust.

Mr. Ward was the grantor of the REW trust. He transferred his EPS stock into the trust, which contained a clause stating that income would be provided to plaintiff as the beneficiary so long as she remained married to Mr. Ward ("the divorce clause"). Mr. Ward's son and any grandchildren of Mr. Ward were the

remaining beneficiaries. Mr. Wright and Mark Fogel were named co-trustees of the REW trust. Mr. Hall testified in deposition that the divorce clause was not included in the initial draft of the REW trust but was inserted after having discussions with his client, Mr. Ward. According to Mr. Ward, it was Mr. Hall's idea to include the divorce clause to protect his assets in the event of divorce.

Plaintiff testified in deposition that she did not know about either the divorce clause or the existence of the other beneficiaries for the REW trust until she saw a copy of the trust document for the first time in late 2009, after her separation from Mr. Ward. All parties agree that she did not participate in the drafting of the REW trust and was not involved in the transfer of EPS shares by Mr. Ward into the trust. She testified that Mr. Ward told her the purpose of the REW trust was to protect EPS shares from claims by the Environmental Protection Agency and other potential judgment creditors. He also said that the trust would hold EPS stock and that plaintiff would be the beneficiary.

After the creation of the REW trust, but before the parties separated on 9 October 2009, checks written from the REW trust were deposited into Mr. Ward's and plaintiff's joint bank

account. Plaintiff signed forms authorizing these direct deposits. However, plaintiff testified that she never saw bank statements from this account and was not involved in the family's finances. Rather, Mr. Ward and Mr. Wright controlled the family's financial matters and paid their bills, with Mr. Wright having the authority to write checks from the joint account into which distributions from the REW trust were deposited.

In 2006, the WF trust was created with the assistance of Mr. Wright and Mr. Hall. To create this trust, Mr. Ward transferred interests in a number of limited liability companies spun off from EPS to plaintiff, who was told by Mr. Ward to immediately transfer these interests into the WF trust. Thus, plaintiff was the grantor of the WF trust, and Mr. Ward was its beneficiary. Although Mr. Hall testified that he typically represents the grantor of a trust, his client for purposes of drafting the WF trust was Mr. Ward, not plaintiff. He did not recall ever providing plaintiff with drafts of the WF trust or discussing the terms of the trust with her. However, plaintiff testified that she thought Mr. Hall represented her interests in the creation of the WF trust. She also testified that Mr. Ward told her that it was "her turn" to be the grantor of a trust and

for him to be the beneficiary, like an inverse of the REW trust. However, Mr. Ward did not disclose the existence of the divorce clause in the REW trust, and no divorce clause was included in the WF trust. Mr. Hall testified that because grantors of a trust retain certain powers of control, the grantor is still liable for payment of taxes on the trust's income. Plaintiff alleges that this tax obligation was not explained to her before she transferred the spun-off LLC interests into the WF trust and became the trust's grantor.

Plaintiff filed this cause of action in Wake County Superior Court on 29 March 2011. The complaint sets forth the following claims: (1) fraudulent inducement; (2) constructive fraud; (3) and breach of fiduciary duty; it also requests the creation of a constructive trust and the termination of the REW and WF trusts. Mr. Ward filed a motion for summary judgment as to all claims on 7 October 2013, and the motion was granted in favor of all defendants on 2 December 2013. However, the trial court failed to specify in its order the grounds upon which it granted summary judgment for defendants, and no transcript has been produced of the hearing on the motion for summary judgment. Plaintiff filed timely notice of appeal.

**Discussion**

## I. Subject Matter Jurisdiction

Plaintiff first argues that the trial court erred to the extent that it granted summary judgment for defendants on the ground that Wake County Superior Court lacked subject matter jurisdiction to resolve the dispute. We agree.

Jurisdiction is "the power to hear and to determine a legal controversy; to inquire into the facts, apply the law, and to render and enforce a judgment." *High v. Pearce*, 220 N.C. 266, 271, 17 S.E.2d 108, 112 (1941) (citation and internal quotation marks omitted). "Subject matter jurisdiction, a threshold requirement for a court to hear and adjudicate a controversy brought before it, is conferred upon the courts by either the North Carolina Constitution or by statute." *In re M.B.*, 179 N.C. App. 572, 574, 635 S.E.2d 8, 10 (2006) (citations and internal quotation marks omitted). "In reviewing a question of subject matter jurisdiction, our standard of review is *de novo*." *Raleigh Rescue Mission, Inc. v. Bd. of Adjust. of Raleigh*, 153 N.C. App. 737, 740, 571 S.E.2d 588, 590 (2002).

Here, defendants argue that Wake County Superior Court lacked subject matter jurisdiction to hear this controversy for two reasons: (1) proper jurisdiction to equitably distribute marital property lies exclusively in the Florida courts, since

Mr. Ward filed the Florida divorce action before plaintiff filed the current suit; and (2) even if North Carolina is the proper state in which to bring suit, the district court, and not the superior court, has jurisdiction over plaintiff's claims for marital misconduct. For the following reasons, we find these arguments unpersuasive.

First, defendants rely on *Beers v. Beers*, 724 So.2d 109, 116-17 (Fla. Dist. Ct. App. 1998) for the proposition that "claims for alleged dissipation of marital assets must be settled in the divorce setting of equitable distribution, not in a collateral proceeding." In *Beers*, the husband filed for dissolution of marriage and equitable distribution against the wife. *Id.* at 112. In response, the wife filed a counter petition alleging fraud, constructive fraud, and breach of fiduciary duty, based on the theory that the husband had secretly depleted marital assets in furtherance of an adulterous relationship throughout the marriage. *Id.* The Florida appellate court held that the judgment entered in favor of the wife on these claims was properly vacated because "[w]here no specific transaction or agreement exists between the spouses, the dissolution of marriage statute . . . provides the exclusive remedy where one's spouse has intentionally dissipated marital

property during the marriage. . . . In our view, there simply is no cognizable tort claim for constructive fraud for a concealed dissipation of marital assets." *Id.* at 117.

Upon careful review, we find *Beers* to be distinguishable and inapposite. The Florida Court specifically held that "*where no specific transaction or agreement exists between the spouses*," the statute controlling equitable distribution provides the exclusive remedy for an alleged dissipation of marital property. There was a discrete transaction and agreement here that distinguishes this case from *Beers*. It is undisputed that Mr. Ward transferred his fifty percent stake in a number of LLC spinoffs from the EPS stock to plaintiff, with an agreement that plaintiff would immediately transfer those assets into the WF trust, for which Mr. Ward was the beneficiary and plaintiff was the grantor. Thus, there is a "specific transaction and agreement" between the spouses here that is the subject of plaintiff's claims for fraudulent inducement, constructive fraud, and breach of fiduciary duty that did not exist in *Beers*. Based on this material distinction, *Beers* is not controlling, and the remedy for plaintiff's claims is not necessarily the Florida equitable distribution action based on that holding.

Furthermore, defendants argue that North Carolina courts should refrain from exercising jurisdiction where the estate is already subject to the proper jurisdiction of the Florida court. Defendants claim that "[t]he res of the marital property is properly subject to the jurisdiction of the Florida court because [Mr. Ward] and [plaintiff] are longtime residents of Florida." Therefore, defendants argue that because "the relief sought would require the [North Carolina] court to control a particular property or res over which another court already has jurisdiction," *Whitmire v. Cooper*, 153 N.C. App. 730, 734, 570 S.E.2d 908, 911 (2002) (quotation marks omitted), Wake County Superior Court should abstain from exercising jurisdiction.

The flaw in this argument is the assumption that the Florida court has proper jurisdiction over the trusts, which are the subject of plaintiff's cause of action. It is well-settled in Florida that "the trial court [in a divorce proceeding] does not have jurisdiction to adjudicate property rights of non-parties." *Ray v. Ray*, 624 So.2d 1146, 1148 (Fla. Dist. Ct. App. 1993); *see also Mann v. Mann*, 677 So.2d 62, 63 (Fla. Dist. Ct. App. 1996) (holding that because title to marital property was held by an individual not a party to the divorce proceedings, the trial court lacked jurisdiction to control that subject

property). Here, neither Mr. Wright nor Mr. Fogel, the trustees of both the REW trust and the WF trust, were named as parties in the Florida divorce action. Thus, under *Ray* and *Mann*, the Florida trial court does not have jurisdiction to adjudicate the property of the trusts. Furthermore, where the third party controlling alleged marital property is a trust, the Florida court must exercise personal jurisdiction over the trustees in order to affect trust property. *See Hanson v. Denckla*, 357 U.S. 235, 245, 2 L. Ed. 2d 1283 (1958) ("Florida adheres to the general rule that a trustee is an indispensable party to litigation involving the validity of the trust. In the absence of such a party a Florida court may not proceed to adjudicate the controversy."). As both Mr. Wright and Mr. Fogel are residents of North Carolina and the situs of the trust is in North Carolina, there is no indication in the record that the Florida court would be able to exercise personal jurisdiction over these parties in order to enter a ruling affecting the trust property. *See In re Estate of Stisser*, 932 So.2d 400, 402 (Fla. Dist. Ct. App. 2006) (holding that the law requires the court to have personal jurisdiction over the trustees of a trust in order to enter a ruling affecting the corpus of the trust).

Defendants also contend that even if this action could be brought in North Carolina, the district court, and not the superior court, has exclusive jurisdiction. In support of this argument, Mr. Ward cites N.C. Gen. Stat. § 7A-244 (2013), which provides that the district court has jurisdiction over proceedings for divorce and equitable distribution of property. However, the North Carolina district courts only have jurisdiction over divorce and equitable distribution when the marital relationship exists in North Carolina and at least one party is a North Carolina resident. N.C. Gen. Stat. § 1-75.4(12) (2013). Because plaintiff and Mr. Ward have been Florida residents since 2002, the district court would have lacked jurisdiction over any potential divorce or equitable distribution claim that plaintiff could have potentially brought.

Nevertheless, defendants contend that the proper means of seeking the relief requested in plaintiff's complaint is through the equitable distribution process. In support of this argument, defendants rely on *Garrison v. Garrison*, 90 N.C. App. 670, 369 S.E.2d 628 (1988), and *Hudson Int'l, Inc. v. Hudson*, 145 N.C. App. 631, 550 S.E.2d 571 (2001). In each of these cases, this Court concluded that the superior court lacked

subject matter jurisdiction to enter orders affecting the same marital property that was already the subject of previous equitable distribution claims properly brought in district court. *See Garrison*, 90 N.C. App. at 672, 369 S.E.2d at 629 (partition action to divide marital home improperly brought in superior court where the marital home was already part of a pending equitable distribution claim); *Hudson*, 145 N.C. App. at 636-37, 550 S.E.2d at 573-74 (declaratory action brought in superior court by third parties concerning ownership of real property that was the subject of a prior equitable distribution action in district court held properly dismissed). However, this Court subsequently noted that "[a]t the core of *Garrison* and *Hudson* were two principles: (1) the same property was the subject of both the superior and district court actions, and (2) *the relief sought and available was similar in each suit*." *Burgess v. Burgess*, 205 N.C. App. 325, 328-29, 698 S.E.2d 666, 669 (2010) (emphasis added).

In *Burgess*, the Court analyzed against the backdrop of *Garrison* and *Hudson* a wife's claims brought in superior court against her husband for divestiture of stock, breach of fiduciary duty, accounting, and inspection, because an equitable distribution suit between the husband and wife was already

pending in district court. *Id.* In its analysis, the Court focused on the similarity of the relief sought and available in each action to determine whether the wife's separate claims in superior court could be "subsumed" into the equitable distribution action in district court. *Id.* at 329, 698 S.E.2d at 670. Most relevant to the analysis here is the *Burgess* Court's holding that the wife's derivative claim premised on breach of fiduciary duty was not sufficiently similar to the equitable distribution action to warrant dismissal from superior court. *Id.* at 332, 698 S.E.2d at 671. The Court identified the following differences between the wife's derivative claim premised on breach of fiduciary duty and the equitable distribution action: (1) the wife was entitled to a jury trial for the derivative suit, but was barred from having a jury trial in equitable distribution; (2) the most that the wife could receive in equitable distribution was a larger portion of marital or divisible property, whereas success on the derivative suit opened access to the husband's separate property in the form of damages; and (3) the district court could not obtain jurisdiction over plaintiff's derivative suit by statute. *Id.* at 331-32, 698 S.E.2d at 671. Therefore, the Court held that because the district court would be unable to grant the wife the

relief she sought, the superior court had subject matter jurisdiction to decide her derivative claim. *Id.*

The reasoning in the *Burgess* Court's holding supports plaintiff's argument that Wake County Superior Court has subject matter jurisdiction over the claims pertaining to the REW trust and the WF trust. First, there is no indication that either of the courts that defendants claim to have more "proper" jurisdiction than Wake County Superior Court in fact have jurisdiction over the trusts. As discussed above, the Florida court does not appear to have personal jurisdiction over the trustees, and the trustees have not been named as parties in the divorce action; therefore, the Florida court lacks jurisdiction to adjudicate the rights pertaining to trust property. *See, e.g.*, *In re Estate of Stisser*, 932 So.2d at 402. Additionally, the North Carolina district court does not have jurisdiction over a potential equitable distribution claim because plaintiff and Mr. Ward have been Florida residents since 2002.

Even if the North Carolina district court did have jurisdiction over the parties, an equitable distribution proceeding would not be able to provide plaintiff the relief she requests. Plaintiff, like the wife in *Burgess*, has demanded a jury trial, to which she would be denied access in district

court. *See Kiser v. Kiser*, 325 N.C. 502, 511, 385 S.E.2d 487, 492 (1989) (holding that no jury trial is available in an equitable distribution action). Additionally, like the wife in *Burgess*, plaintiff is seeking compensatory damages in excess of $10,000.00, in addition to punitive damages, on her claims for breach of fiduciary duty, constructive fraud, and fraudulent inducement. If she is successful on these claims, she may get a judgment which could be enforced against Mr. Ward's separate property. However, in the equitable distribution claim, the most that plaintiff would be able to win is a favorable distribution of marital or divisible assets. Therefore, as in *Burgess*, the relief plaintiff seeks in superior court would be unavailable in district court, leading us to conclude that Wake County Superior Court has proper jurisdiction to adjudicate these matters.

Thus, for the foregoing reasons, we conclude that the trial court erred to the extent that it granted defendants' motion for summary judgment on the ground that Wake County Superior Court lacked subject matter jurisdiction.

## II. Statute of Limitations

Plaintiff next argues that the trial court erred to the extent that it granted summary judgment in favor of defendants

for plaintiff's failure to timely file this cause of action. We agree.

Summary judgment entered in favor of a defendant based on the statute of limitations "is proper when, and only when, all the facts necessary to establish the limitation are alleged or admitted, construing the non-movant's pleadings liberally in his favor and giving him the benefit of all relevant inferences of fact to be drawn therefrom." *Huss v. Huss*, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976).

Plaintiff's claim for constructive fraud based on a breach of fiduciary duty is subject to the ten-year statute of limitations under N.C. Gen. Stat. § 1-56 (2013). *Adams v. Moore*, 96 N.C. App. 359, 362, 385 S.E.2d 799, 801 (1989). Defendants have failed to argue in their briefs how this claim is time-barred by the ten-year statute of limitations, and there appears to be no legal support for such a contention. Accordingly, we conclude that the trial court erred to the extent that it dismissed plaintiff's claim for constructive fraud on the basis of the statute of limitations.

Additionally, for a claim based on fraud, the statute of limitations is three years from the date that the cause of action accrues. "The cause of action shall not be deemed to

have accrued until the discovery by the aggrieved party of the facts constituting the fraud[.]" N.C. Gen. Stat. § 1-52(9) (2013). "Discovery" is defined as actual discovery or the time when the fraud should have been discovered in the exercise of due diligence. *See Hyde v. Taylor*, 70 N.C. App. 523, 528, 320 S.E.2d 904, 908 (1984).

> Whether a plaintiff has exercised due diligence is ordinarily an issue of fact for the jury absent dispositive or conclusive evidence indicating neglect by the plaintiff as a matter of law. In other words, when there is a dispute as to a material fact regarding when the plaintiff should have discovered the fraud, summary judgment is inappropriate, and it is for the jury to decide if the plaintiff should have discovered the fraud. Failure to exercise due diligence may be determined as a matter of law, however, where it is clear that there was both capacity and opportunity to discover the mistake.

*Spears v. Moore*, 145 N.C. App. 706, 708-09, 551 S.E.2d 483, 485 (2001) (citation omitted).

Defendants argue that plaintiff failed to exercise due diligence as a matter of law. They contend that because plaintiff filed her complaint on 29 March 2011, more than three years after she should have known about the alleged fraud, she is time-barred by the statute of limitations. We find this argument unpersuasive. Plaintiff testified that she did not

have knowledge of the terms of the REW trust until after she and Mr. Ward separated in October 2009. This claim was corroborated by the fact that Mr. Ward admitted that plaintiff was excluded from the drafting of the trusts and was uninvolved with the couple's financial affairs. Importantly, in discussing plaintiff's involvement in the drafting of the REW trust, Mr. Hall testified that he "wouldn't even consider" discussing the terms of a trust with the beneficiary because the grantor "may not even want the beneficiary . . . to even know the trust exists[.]" Mr. Ward's and Mr. Hall's open exclusion of plaintiff in the drafting of the REW trust undercuts their argument that due diligence required her to seek the document out on her own accord and review it. "[C]onstruing the non-movant's pleadings liberally in [her] favor and giving [her] the benefit of all relevant inferences of fact to be drawn therefrom," *Huss*, 31 N.C. App. at 468, 230 S.E.2d at 163, the record does not demonstrate plaintiff's lack of diligence as a matter of law. Accordingly, the trial court erred to the extent that it granted summary judgment in defendants' favor on this ground.

### III. Substantive Claims

Plaintiff next argues that the trial court erred by concluding that no genuine issues of material fact exist and defendants are entitled to judgment as a matter of law on plaintiff's substantive claims for fraudulent inducement, constructive fraud, and breach of fiduciary duty. We agree with plaintiff's arguments regarding the WF trust, but we affirm the trial court's granting of summary judgment for defendants on any claims pertaining to the REW trust.

**A. The REW Trust**

First, we hold that the trial court did not err by granting summary judgment in favor of defendants on plaintiff's claims for breach of fiduciary duty and constructive fraud as they relate to the REW trust. Under the Uniform Trust Code, a trust is voidable "to the extent that its creation was induced by fraud, duress, or undue influence." N.C. Gen. Stat. § 36C-4-406 (2013). The elements of a claim of constructive fraud require: "(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) (citing *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003)), *disc. review*

*denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). "'[A]n essential element of constructive fraud is that defendants sought to benefit themselves in the transaction.'" *Sterner*, 159 N.C. App. at 631, 583 S.E.2d at 674 (quoting *State ex rel. Long v. Petree Stockton, L.L.P.*, 129 N.C. App. 432, 445, 499 S.E.2d 790, 798 (1998)). Like constructive fraud, "[a] claim for breach of fiduciary duty requires the existence of a fiduciary relationship." *White*, 166 N.C. App. at 293, 603 S.E.2d at 155; *see also Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (existence of fiduciary duty is essential element of constructive fraud claim), *disc. review denied*, 356 N.C. 164, 568 S.E.2d 196 (2002). Although "the relationship between husband and wife is the most confidential of all relationships," our Courts have found that a spouse only breaches a fiduciary duty owed to the other spouse "within the context of a distinct agreement or transaction between the spouses." *Smith v. Smith*, 113 N.C. App. 410, 413, 438 S.E.2d 457, 459 (1994).

As plaintiff concedes, she is merely the beneficiary of the REW trust and was not induced into agreeing to its terms. Thus, the claim for fraudulent inducement in the complaint only applies to the WF trust, not the REW trust. Although Mr. Ward

and Mr. Hall included the divorce clause in the REW trust to divest plaintiff of beneficiary rights in the event of divorce, plaintiff cites no authority, and we find none, indicating that the grantor of a trust owes a duty to the beneficiary of a trust to refrain from including such clauses that may divest the beneficiary's rights upon the happening of a certain event. Because plaintiff's claims regarding the REW trust do not arise "within the context of a distinct agreement or transaction between the spouses," *Smith*, 113 N.C. App. at 413, 438 S.E.2d at 459, there was no fiduciary duty owed to plaintiff sufficient to survive summary judgment on her claims for constructive fraud and breach of fiduciary duty.

**B. The WF Trust**

In contrast, taking the evidence in the light most favorable to the non-moving party, *Huss*, 31 N.C. App. at 468, 230 S.E.2d at 163, we hold that plaintiff has forecast sufficient evidence regarding the creation of the WF trust to survive summary judgment on her claims of fraudulent inducement, constructive fraud, and breach of fiduciary duty.

"The essential elements of fraud [in the inducement] are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to

deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009).

Mr. Ward told plaintiff that it was "her turn" to be the grantor of the WF trust and indicated that the WF trust and the REW trust were merely the inverse of each other regarding which party was to be the grantor and beneficiary, despite the fact that the WF trust did not contain a divorce clause and the REW trust did. Thus, there was a misrepresentation or concealment. Furthermore, unlike in the creation of the REW trust, Mr. Ward owed plaintiff a fiduciary duty to disclose all material information in the creation of the WF trust. "A duty to disclose arises where a fiduciary relationship exists between the parties to a *transaction*. The relationship of husband and wife creates such a duty." *Sidden v. Mailman*, 150 N.C. App. 373, 376, 563 S.E.2d 55, 58 (2002) (citation and quotation marks omitted). Because Mr. Ward transferred his LLC interests to plaintiff, who was then bidden to transfer those interests to the WF trust as the grantor of the trust, there was a specific transaction that produced a fiduciary relationship between Mr. Ward and plaintiff as husband and wife. The materiality of misrepresentations or concealments is a factual issue left for

the jury, *Latta v. Rainey*, 202 N.C. App. 587, 599, 689 S.E.2d 898, 909 (2010).

Additionally, whether the representations or concealments were calculated or intended to deceive are questions of fact generally left for the jury if the circumstances could demonstrate fraudulent intent. *Latta*, 202 N.C. App. at 600, 689 S.E.2d at 909. We believe such circumstances are apparent here. Mr. Ward knew his former business partner had lost much of his EPS stock to his ex-wife during a divorce, he inserted the divorce clause into the REW trust, and he transferred his own property to plaintiff with instructions for her to then transfer those assets into the WF trust, which did not have a divorce clause, for which Mr. Ward was the beneficiary. Plaintiff and Mr. Ward agreed that plaintiff never saw a copy of the REW trust during the marriage, she did not participate in the drafting of the trusts, and she generally left the handling of the couple's assets to Mr. Ward and Mr. Wright. She also testified that she trusted her husband to look after her best interests during the marriage. Taking this evidence in the light most favorable to plaintiff, we believe that the circumstances could demonstrate fraudulent calculation and intent sufficient to go to the jury. *See id.*

Finally, the evidence shows that plaintiff has suffered harm as a result of her reliance on Mr. Ward's representations or concealment because she has a continuing tax burden relating to the WF trust as its grantor.

Accordingly, because plaintiff forecast evidence establishing each element of fraudulent inducement relating to the creation of the WF trust, we conclude that the trial court erred by granting summary judgment for defendants on this claim. Because constructive fraud and breach of fiduciary duty are less demanding causes of action than fraudulent inducement, and the essential elements of each overlap, we further hold that plaintiff has presented sufficient evidence to survive defendants' motion for summary judgment on the remaining claims related to the WF trust. *See Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981); *Ellison v. Alexander*, 207 N.C. App. 401, 408, 700 S.E.2d 102, 108 (2010).

## IV. Divorce Clause

Plaintiff's final argument on appeal is that the trial court erred by granting summary judgment in favor of defendants because the "divorce clause" in the REW trust is void as contrary to public policy. We disagree.

"A trust may be created only to the extent that its purposes are lawful, not contrary to public policy, and possible to achieve." N.C. Gen. Stat. § 36C-4-404. Plaintiff contends that because the REW trust was funded with marital property, the divorce clause would "circumvent" the parties' prenuptial agreement as to distribution of marital property. We take no position as to whether the EPS stock was separate or marital property. Rather, we reject plaintiff's contention that the divorce clause runs afoul of public policy. North Carolina law already allows for certain rights to terminate upon divorce, such as those in a will. *See* N.C. Gen. Stat. § 31-5.4 (2013). In contrast, the commentary to the Restatement (Second) of Trusts illustrates the types of divorce clauses that may contravene public policy. For example, it may be unlawful for a trust to contain a provision for the payment of a sum of money to a beneficiary if he or she were to procure a divorce, because "enforcement would tend to the disruption of the family, by creating an improper motive for terminating the family relation." Restatement (Second) of Trusts § 62 comment e. Here, rather than serving to disrupt the family unit, the divorce clause in the REW trust incentivized plaintiff to remain

married to Mr. Ward so that she may continue to enjoy the distributions from the REW trust as its beneficiary.

Furthermore, some estate planning form manuals recommend using similar divorce clauses if the grantor so chooses. *See* G. Holding and C. Reid, *Estate Planning Forms Manual*, 8-43 (BB&T 2011) ("If my wife and I become divorced or legally separated, she shall be deemed deceased for all purposes of this Trust."). We agree with defendants that a ruling that the divorce clause here is void as against public policy may disrupt the lives of North Carolina citizens who have already planned their estates based on similar clauses. This argument is overruled.

## Conclusion

For the foregoing reasons, we hold that the trial court erred by granting summary judgment for defendants on plaintiff's claims related to the WF trust. However, we affirm summary judgment for defendants on the claims related to the REW trust.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

Judges DILLON and DAVIS concur.